## Case No. 17,944.

### WOOD et al. v. DUMMER et al.

[3 Mason, 308.] [1]

Circuit Court, D. Maine. May Term, 1824.

CORPORATIONS—CAPITAL STOCK—TRUST FUND FOR CREDITORS—BILL IN EQUITY—PARTIES—JURISDICTION OF FEDERAL COURT.

1. An incorporated bank divided three-fourths of its capital stock, before the expiration of its charter, among the stockholders, without providing funds which ultimately were sufficient to pay its outstanding bank notes. It was *held* that the capital stock was a trust fund for the payment of the bank notes, and might be followed into the hands of the stockholders.

[Cited in Curran v. State of Arkansas, 15 How. (56 U. S.) 308; Cleveland v. La Crosse & M. R. Co., Case No. 2,887; Chicago, R. I. & P. R. Co. v. Howard, 7 Wall. (74 U. S.) 410; Winans v. McKean R. & Nav. Co., Case No. 17,862; Putnam v. New Albany, Id. 11,481; Haskins v. Harding, Id. 6,196; Sawyer v. Hoag, 17 Wall. (84 U. S.) 621; Sanger v. Upton, 91 U. S. 61; Scammon v. Kimball, 92 U. S. 369; Bowden v. Santos, Case No. 1,716; Farrington v. Tennessee, 95 U. S. 687; Union Nat. Bank v. Douglass, Case No. 14,375; Foreman v. Bigelow, Id. 4,934; Hatch v. Dana, 101 U. S. 213; Wilbur v. Stockholders, Case No. 17,636; Mutual Building Fund & Dollar Sav. Bank v. Bosseiux, 3 Fed. 837; Holmes v. Sherwood, 16 Fed. 728; Scoville v. Thayer, 11 Fed. 190. Distinguished in Walser v. Seligman, 13 Fed. 416. Cited in Fogg v. Blair, 133 U. S. 541, 10 Sup. Ct. 341; Winters v. Armstrong, 37 Fed. 521; Gould v. Little Rock, M. R. & T. Ry. Co., 52 Fed. 684.]

[Cited in Baker v. Atlas Bank, 9 Metc. (Mass.) 192. Cited in brief in Ballin v. J. & F. B. Friend Lace Importing Co. (Wis.) 47 N. W. 517; Beach v. Miller, 130 Ill. 163, 22 N. E. 464; Bent v. Hart, 73 Mo. 643; Bouton v. Smith, 113 Ill. 485. Cited in Chaffee v. Rutland R. Co., 55 Vt. 126; Clapp v. Peterson, 104 Ill. 31; Clayton v. Ore Knob Copper Co., 109 N. C. 385, 14 S. E. 38; Commercial Fire Ins. Co. v. Board of Revenue of Montgomery Co., 99 Ala. 1, 14 South. 492; Conover v. Hull, 10 Wash. 673, 39 Pac. 168; Coulter v. Robertson, 24 Miss. 298; Crandall v. Lincoln, 52 Conn. 95. Cited in Elyton Land Co. v. Birmingham Warehouse & Elevator Co., 92 Ala. 407, 9 South. 133; Fear v. Bartlett, 81 Md. 435, 32 Atl. 323; First Nat. Bank of Deadwood v. Gustin Minerva Consol. Min. Co., 42 Minn. 333, 44 N. W. 200; Fox's Appeal, 93 Pa. St. 417; Germantown P. Ry. Co. v. Fitler, 60 Pa. St. 131; Goodin v. Cincinnati & W. Canal Co., 18 Ohio St. 182. Cited in brief in Heman v. Britton, 88 Mo. 550. Cited in Higgins v. Lansingh, 154 Ill. 301, 40 N. E. 380; Hightower v. Thornton, 8

Ga. 486. Cited in brief in Hill v. Fogg, 41 Mo. 567. Cited in Hill v. Pioneer Lumber Co., 113 N. C. 173, 18 S. E. 108. Criticised in Hospes v. Northwestern Manuf'g & Car Co., 48 Minn. 192, 50 N. W. 1119. Cited in Hulings v. Hulings L. Co., 38 W. Va. 374, 18 S. E. 629; Jones v. Whitworth, 94 Tenn. 602, 30 S. W. 738. Distinguished in Lamb v. Laughlin, 25 W. Va. 310. Cited in Landis v. Sea Isle City Hotel Co. (N. J. Ch.) 31 Atl. 763. 764; Leathers v. Janney, 41 La. Ann. 1120, 6 South. 886; Lexington Life, Fire & Mar. Ins. Co. v. Page, 17 B. Mon. 413; Mann v. Pentz, 3 N. Y. 422; Mott v. Pennsylvania R. Co., 30 Pa. St. 9; National Trust Co. v. Miller, 33 N. J. Eq. 163; O'Bear Jewelry Co. v. Volfer (Ala.) 17 South. 527; Ohio L. & T. Co. v. Merchants' Ins. & Trust Co., 11 Humph. 32; Reid v. Eatonton Manuf'g Co., 40 Ga. 98; Rouse v. Merchants' Nat. Bank, 46 Ohio St. 503, 22 N. E. 296; Shields v. Clifton Hill Land Co., 94 Tenn. 123, 28 S. W. 675, 676. Cited in brief in Stebbins v. Edmands, 12 Gray, 204. Cited in Taylor v. Miami Ex. Co., 5 Ohio, 165. Cited in brief in Union Mut. Life Ins. Co. v. Frear Stone Manuf'g Co., 97 Ill. 538; Whitwell v. Warner, 20 Vt. 439.]

2. A bill in equity for such purpose might be maintained by some of the holders of the bank notes against some of the stockholders, the impossibility of bringing all before the court being sufficient to dispense with the ordinary rule of making all parties in interest parties.

[Cited in Omaha Hotel Co. v. Wade, 97 U. S. 21; First National Bank of Hannibal v. Smith, 6 Fed. 216; Dormitzer v. Illinois & St. L. Bridge Co., 6 Fed. 220; Swan Land & Cattle Co. v. Frank, 39 Fed. 461; Chicago Trust & Sav. Bank v. Bentz, 59 Fed. 646.]

[Cited in Adler v. Milwaukee Pat. Brick Manuf'g Co., 13 Wis. 61; Brewer v. Michigan Salt Ass'n, 58 Mich. 356, 25 N. W. 377. Cited in brief in Livingston Co. Agricultural Soc. v. Hunter, 110 Ill. 157; Merchants' Ins. Co. v. Hill, 86 Mo. 468. Cited in Williams v. Boice, 38 N. J. Eq. 371.]

3. In such case the decree against the stockholders before the court, should be only for their contributory share of the debt, in the proportion which the stock held by them, bore to the whole capital stock.

[Cited in Curran v. State of Arkansas, 15 How. (56 U. S.) 308; Payne v. Hook, 7 Wall. (74 U. S.) 432; Richmond v. Irons, 121 U. S. 45, 7 Sup. Ct. 795.]

[Cited in Brundage v. Monumental Gold & Silver Min. Co., 12 Or. 322. 7 Pac. 316; Farmers' L. & T. Co. v. Canada & S. L. Ry. Co., 127 Ind. 271, 26 N. E. 790; Hightower v. Thornton, 8 Ga. 486. Cited in brief in Lane v. Nickerson, 99 Ill. 284. Cited in Wetherbee v. Baker, 35 N. J. Eq. 506; Williams v. Traphagen, 38 N. J. Eq. 58.]

4. The holder of bank notes, payable to bearer, is not an assignee of a chose in action, within the eleventh section of the judiciary act of 1789, c. 20 [1 Stat. 78], limiting the jurisdiction of the circuit court.

[Cited in Cooper v. Thompson, Case No. 3,202.]

Bill in equity brought by the plaintiffs [Joshua B. Wood and others], as holders of the bank notes of the Hallowell and Augusta Bank, against the defendants [Jeremiah Dummer and others], as stockholders in the same bank, for payment of the same notes upon the ground of an asserted fraudulent division of the capital stock of the bank by the stockholders. The defendants put in answers, denying the fraud, but admitting the division of the capital stock, &c.;

---

[1] [Reported by William P. Mason, Esq.]

and denying the plaintiffs' title to relief. The general replication was filed, and the cause was set down for a hearing upon the whole merits, at the last October term of the court, upon certain admissions of the parties.

Alden & Whitman, for plaintiffs.
Bond & Longfellow, for defendants.

STORY, Circuit Justice. The Hallowell and Augusta Bank was incorporated in March, 1804, by the legislature of Massachusetts, with a capital stock of $200,000, divided into shares of $100 each, for a term which expired on the first Monday of October, 1812, with the usual rights and privileges belonging to the banks in the same state. In June, 1812, the legislature passed an act (Act of 1812, c. 57) continuing all the banks, whose charters would expire on the first Monday of October, 1812, as corporate bodies until the first Monday of October, 1816, "for the sole purpose of enabling said banks gradually to settle and close their concerns, and divide their capital stock." And by a further act, passed in December, 1816 (Act of 1816, c. 110), the term was prolonged for three years from the passing of this last act. In January, 1813, at a meeting of the stockholders of the Hallowell and Augusta Bank, a vote was passed, ordering a dividend to be made among the stockholders of the bank of fifty per cent. of the capital stock thereof; and in October in the same year, a vote was passed for a further dividend of twenty-five per cent. of the capital stock, making in the whole a dividend of seventy-five per cent. of the whole capital stock among the stockholders. The notes of the bank continued to circulate in good credit until after November, 1814; and the plaintiffs were, in October and November, 1814, owners in their several rights of notes of the same bank to a sum in the aggregate amounting to more than $29,000, which were presented for payment to the bank, and payment refused. The plaintiffs received certain notes of the directors as collateral security, but these were never paid. In fact one quarter part of the capital stock of the bank had never been paid in, but was secured by the notes of the stockholders, called "stock notes"; and about $90,000 of debts (beside stock notes) were due from certain directors of the bank, who became insolvent and utterly unable to pay the same. So that nearly three quarters of the stock was lost or unpaid, either from insolvency or some other cause, and left the bank involved, after the division of the stock, in deep insolvency. In June, 1812, another and new bank was incorporated, composed in part of the same persons, with the same corporate name. The new bank, for a considerable time, continued to give credit to, and circulate the notes of the old bank; and the bill asserted the new bank to have become possessed of the funds of the old bank to a very large amount.

Such are the principal facts; and the claim of the plaintiffs is to be reimbursed by the defendants, (who are owners of three hundred and twenty shares) out of the dividends of the capital stock received by them, the amount of the debts so due to the plaintiffs respectively, for the bank notes above stated.

The case is full of difficulties. The bill is drawn in a very loose and inartificial manner. It proceeds principally upon the grounds of a gross over issue of bank notes, and other violations of the charter, and of a fraudulent dividend by the stockholders with a knowledge of their insolvency; grounds, which are denied by the answers, and are not in the slightest degree established in the proofs. It does not directly proceed upon the ground, that the defendants hold a trust fund applicable to the payment of the debts of the corporation; but leaves this to be picked up in fragments by a minute analysis of the bill. I pass, however, over these objections, for the purpose of considering that, which is the principal point argued in the cause, whether the capital stock in the hands of the stockholders is liable to the payment of the debts of the bank.

It appears to me very clear upon general principles, as well as the legislative intention, that the capital stock of banks is to be deemed a pledge or trust fund for the payment of the debts contracted by the bank. The public, as well as the legislature, have always supposed this to be a fund appropriated for such purpose. The individual stockholders are not liable for the debts of the bank in their private capacities. The charter relieves them from personal responsibility, and substitutes the capital stock in its stead. Credit is universally given to this fund by the public, as the only means of repayment. During the existence of the corporation it is the sole property of the corporation, and can be applied only according to its charter, that is, as a fund for payment of its debts, upon the security of which it may discount and circulate notes. Why, otherwise, is any capital stock required by our charters? If the stock may, the next day after it is paid in, be withdrawn by the stockholders without payment of the debts of the corporation, why is its amount so studiously provided for, and its payment by the stockholders so diligently required? To me this point appears so plain upon principles of law, as well as common sense, that I cannot be brought into any doubt, that the charters of our banks make the capital stock a trust fund for the payment of all the debts of the corporation. The bill-holders and other creditors have the first claims upon it; and the stockholders have no rights, until all the other creditors are satisfied. They have the full benefit of all the profits made by the establishment, and cannot take any portion of the fund, until all the other claims on it are extinguished. Their rights are not to the capital stock, but to the residuum after all demands on it are paid. On a dissolution of

the corporation, the bill-holders and the stock-holders have each equitable claims, but those of the bill-holders possess, as I conceive, a prior exclusive equity. The same doctrine has been recognized by the supreme court of Massachusetts in Vose v. Grant, 15 Mass. 505, 517, 522, and Spear v. Grant, 16 Mass. 9, 15.

If I am right in this position, the principal difficulty in the cause is overcome. If the capital stock is a trust fund, then it may be followed by the creditors into the hands of any persons, having notice of the trust attaching to it. As to the stockholders themselves, there can be no pretence to say, that, both in law and fact, they are not affected with the most ample notice.

· The doctrine of following trust funds into the hands of any persons, who are not innocent purchasers, or do not otherwise possess superior equities, has been long established. Lord Redesdale in Adair v. Shaw, 1 Schoales & L. 243, 262, lays it down in very broad terms. He says: "If we advert to the cases on this subject, we shall find, that trusts are enforced not only against those persons, who rightfully are possessed of the trust property, as trustees, but also against all persons, who come into possession of the property bound by the trust with notice of the trust; and whoever comes so into possession, is considered as bound with respect to that special property to the execution of the trust." And a very strong recognition, as well as application of the principle, will be found in Taylor v. Plumer, 3 Maule & S. 562, 574, even in a court of common law. Upon this ground, assets disposed of by executors by misapplication, or existing in the hands of debtors, where the executor is insolvent, or there is collusion, are often reached in favour of creditors, as a trust fund. Hill v. Simpson, 7 Ves. 152, and the cases there cited fully illustrate this position.[2] The cases of partnership furnish also a pretty strong analogy. There, in equity, partnership funds will be followed in favour of creditors into the hands of third persons. It is true, that, as the master of the rolls said in Campbell v. Mullett, 2 Swanst. 551, 575, the equities of creditors are to be worked out through the medium of the partners. They have no lien, but something approaching to a lien, which courts of equity will regard and enforce, in all cases, where superior rights, which ought to be protected, do not intervene.[3] It is not, however, necessary to search for analogous cases; for upon

[2] See, also, Moses v. Murgatroyd, 1 Johns. Ch. 119; Dexter v. Stewart, 7 Johns. Ch. 52; Shepherd v. McEvers, 4 Johns. Ch. 136; Long v. Majestre, 1 Johns. Ch. 305; Riddle v. Mandeville, 5 Cranch [9 U. S.] 322; Russell v. Clark's Ex'rs, 7 Cranch [11 U. S.] 69.

[3] See, also, Ex parte Ruffin, 6 Ves. 119, 127; Ex parte Fell, 10 Ves. 347; Ex parte Williams, 11 Ves. 3; Ex parte Harris, 1 Madd. 583; Ex parte Kendall, 17 Ves. 514, 526; Murray v. Murray, 5 Johns. Ch. 60; Ex parte Lodge, 1 Ves. Jr. 166; Taylor v. Fields, 4 Ves. 396; Young v. Keighly, 15 Ves. 557.

the plain import of the charter, the capital stock is a trust fund for creditors, and the stockholders, upon the division, take it subject to all equities attached to it. They are, to all intents and purposes, privies to the trust, and receive it cum onere.

Another consideration is, whether the suit is well founded in point of jurisdiction. The 11th section of the judiciary act of 1789 (chapter 20) provides, that no circuit court shall have cognizance of any suit to recover the contents of any promissory note or other chose in action, in favour of an assignee, unless a suit might have been prosecuted in such court to recover the said contents, if no assignment had been made, except in cases of foreign bills of exchange. It has been objected, that this section prohibits the present suit. But my opinion is, that it is wholly inapplicable. In the first place, the bank notes were payable to bearer, and the bearer does not claim by any assignment. He is an original holder. Bank notes pass in and out of the bank many times, and the property in them vests by mere delivery in the person, who comes fairly in possession of them. In the next place, the plaintiffs do not found their title to relief solely upon their right as holders of these notes. Their present cause of action is collateral to that right. Their demand against the defendants is original in themselves upon the non-payment and insolvency of the bank, and is not derived under the title of any other person. It never vested in any other person, and has never come to them by any assignment. See Bean v. Smith [Case No. 1,174].

The next consideration is, whether the bill makes out a case, which upon the facts proved or admitted, entitles the plaintiffs to relief. I have already adverted to the loose structure of the bill. It primarily charges the case, as a case of fraud; that is now abandoned. If it can stand at all, it must be simply on the fact, that the defendants have the funds in their possession. That alone could not entitle the parties to relief, without allegations of insolvency on the part of the corporation or of the non-existence of other funds. Now the bill does not allege, that the corporation is insolvent, nor that it is dissolved, nor that there is no other corporate property, out of which the debts can be paid. These are extraordinary omissions; and if there had been a demurrer to the bill, it would be difficult for the court to have strained hard enough to support it. But these defects are in some degree helped by the answers, which admit the insolvency of the corporation, and show, that in fact no sufficient funds for payment of its debts are in existence, independent of the capital stock. Then again the bill (notwithstanding the intimations thrown out by the court on a former hearing of the cause) does not charge, that the capital stock is a trust fund, appropriated by law and the charter to the payment of the debts, and that the surplus

only, after such payment, belongs to the stockholders. Such an allegation was most fit to have been made upon the grounds, on which ultimately the plaintiffs concluded to rest their case at the hearing. The court is therefore compelled to thread it out by inference and intendment and exposition of the charter, as made part of the pleadings. Then again the bill charges the new Hallowell and Augusta Bank to be possessed of large funds of the old bank, which ought to be applied to the payment of the debts of the latter; and without attempting to bring the new bank to a hearing, the bill has, by the plaintiffs, been dismissed as against the new bank, leaving all the inferences, deducible from the charge in the bill, in full force against the plaintiffs. This ought to have been cured by an amendment of the bill.

I advert to these defects, not in the spirit of censure, (for I am well aware, that an apology is found in the fact, that chancery proceedings have, hitherto, but in a slight degree engaged the attention of the bar in this district), but in a spirit of regret, because they have been most embarrassing to the court in every step of its progress, and distressed it by creating a perpetual struggle between the desire to do justice to the parties, after so prolonged and expensive a controversy, and the difficulty of overcoming technical principles.

The exception as to parties ranges itself under this head. There is no allegation in the bill, that the old corporation is defunct, so as to dispense with its being made a party. The answers do not deny, that it yet has a legal existence, and therefore afford no help to cure the defect. Now, if in existence, nothing can be more clear, than that it ought to have been made a party to the bill. It is the original debtor; its funds are to be applied in payment of debts, and it would be wrong to touch those funds, without the most plenary proofs, that the debts were due, and the corporation had no defence.

There is a case very much like the present in many of its circumstances. It is Curson v. African Co., reported in 1 Vern. 121, and somewhat more fully as to the facts in Skin. 84. The plaintiff was a creditor on bond of the old African Company, which became insolvent, but did not surrender its charter, and a new company was incorporated, consisting for the most part of the old members, to which the old company assigned its effects for payment of its debts. The suit was against the new company, for payment of the plaintiff's debts out of these effects, as a trust fund. The difficulty was, that the old company was not made a party to the bill. Lord Keeper North had some hesitation about the necessity of issuing process against the old company, because they had no property, on which a distringas could issue to compel them to appear. But he seems to have had no doubt of proceeding, if the company was dissolved, nor of operating on the fund itself. He said: "If an executor convey over all the estate, and go to the Indies, or elsewhere not to be found, the estate shall be liable to satisfy the creditors; but this shall be after he hath stood out all process." Skin. 84, 85. The objection, however, was finally waived, and the plaintiff had a decree for forty per cent. being the same amount as the other creditors had received. This difficulty in point of averment and proof (for the fact of dissolution is notorious to all) may, however, as I think, be overcome. The acts of the legislature creating the bank, and continuing its existence for a limited time, are made part of the bill; and as a prolonged existence cannot be presumed, and is not asserted in the answers, the court must take it to be true, that the corporation expired by the legislative limitation, antecedent to the filing of the bill. Upon the clearest principles it cannot be necessary to make a non-existing corporation a party. But then it is argued, that no decree ought to be made without making all the stockholders parties to the bill, for all are liable to contribution. I agree, that if proper parties are not made, the defendant may demur to the bill, or state it by plea or answer, or may object to a decree at the hearing, or even obtain a reversal, in some cases, after a decree. Whenever, taken either by demurrer, or plea, or answer, or at the hearing, the court, if the objection is well founded, is not bound to dismiss the bill, but may retain it, giving leave to make new parties.[4] The subject as to who are necessary parties, and when they may be dispensed with, was a good deal discussed by the court in delivering its judgment in West v. Randall [Case No. 17,424]. The principal cases are there collected and commented on. The general rule is, that all persons materially interested, either as plaintiffs or defendants, are to be made parties. There are exceptions, just as old and as well founded, as the rule itself. Where the parties are beyond the jurisdiction, or are so numerous, that it is impossible to join them all, a court of chancery will make such a decree, as it can, without them. Its object is to administer justice, and it will not suffer a rule, founded in its own sense of propriety and convenience, to become the instrument of a denial of justice to parties before the court, who are entitled to relief. What is practicable to bring all interest before it, will be done. What is impossible or impracticable, it has not the rashness to attempt, but it contents itself with disposing of the equities before it,

4 Cooper. Eq. Pl. 33, 289; Mitf. Eq. Pl. 144, 145; Jones v. Jones, 3 Atk. 110; Wyatt, Pract. Reg. 299; 1 P. Wms. 428, 599; 3 P. Wms. 331; Palk v. Clinton, 12 Ves. 48, 58; Bishop of Winchester v. Beavor. 3 Ves. 314; Attorney General v. Jackson, 11 Ves. 365; Millegan v. Mitchell, 3 Cranch [7 U. S.] 220; Cockburn v. Thompson, 16 Ves. 321, 325; Madox v. Jackson. 3 Atk. 406.

leaving, as far as it may, the rights of other persons unprejudiced. In respect to the exception on account of the numerousness of parties, the question has been discussed and acted upon in many cases, particularly in Chancey v. May, Prec. Ch. 592; Leigh v. Thomas, 2 Ves. Sr. 312; Lloyd v. Loaring, 6 Ves. 773; Adair v. New River Co., 11 Ves. 429; Good v. Blewitt, 13 Ves. 397; and Cockburn v. Thompson, 16 Ves. 320.[5] The result of the whole cases is, that where the parties are so numerous, that it is inconvenient or impracticable to bring all before the court, the rule, which is founded on the consideration of public good, shall not be applied, since it would defeat the purposes of justice.

Now, no case could afford a stronger illustration for the application of the principle, than the present. Here, the capital stock is divisible into 2,000 shares of 100 dollars each. Every share is transferable, and may be unlimitedly assigned to any persons whatsoever, whether citizens or aliens, residents or non-residents. It is obviously impracticable in such a case to bring all the stockholders before the court. Many of them may reside, and probably do reside, in other states; and the court must presume, that the shares are very variously distributed. There is no complaint, that the defendants now before the court do not represent effectually the interests adverse to the plaintiffs, or that the struggle is not maintained with all due legal pertinacity. Nor is it pretended, that the other stockholders have means of affording a more effectual defence to the defendants in respect to their own particular interests. The objection is now made upon dry technical principles of strict right, and upon these it cannot and ought not to be sustained. The case of the City of London v. Richmond, 2 Vern. 421. 2 Eq. Cas. Abr. 86, Prec. Ch. 156, 1 Brown, Parl. Cas. 516, is in point. There, the city had granted a lease of certain water to one A, who afterwards assigned over the lease to trustees in trust for the holders of the shares, (900 shares) into which it was divided. The rent being unpaid, the bill was brought against the assignees and some of the shareholders; and upon an objection, that all ought to have been joined, it was expressly overruled, upon the ground of its impracticability. There is an anonymous case in 2 Eq. Cas. Abr. 166, pl. 7, to the same effect. Certain persons became subscribers to a bank to be authorized by parliament, and £6,000 was expended in endeavoring to effect the object. The persons, who had advanced the £6,000, brought their bill for repayment against sixteen out of two hundred and fifty subscribers. The court overruled the objection taken for want of all the subscribers, because the plaintiffs sought to recover only their proportion of the loss from the defendants.

Upon the whole, my opinion is, that the objection of the want of sufficient parties cannot be maintained. We may then proceed to the merits of the defence, as disclosed in the answers. One ground there taken is, that the demands of the plaintiffs respectively are barred by the statute of limitations. But this bar to a decree cannot, upon the facts, be sustained. The rights of the plaintiffs accrued as against the defendants within six years; for until a refusal of payment by the bank of its notes, followed by an inability to discharge them, there was no cause of proceeding in equity against the defendants. There is no positive bar to suits in equity; but whenever any limitation is adopted, it is ordinarily regulated by analogy to the common law. Here, the claim is against a trust fund in the hands of the defendants; and in cases, not of constructive, but of express trusts, so long, at least, as they are not encountered by an adverse possession and denial of right, the statute of limitations does not begin to run. I should have very great difficulty in allowing a bar of the statute of limitations to operate in a case of this nature, unless where the circumstances of negligence on one side, and of positive denial of right on the other were very cogent. Here the capital stock was actually divided, to the amount of $150,000, in January and October, 1813, at a time when it was perfectly well known, or ought to have been known, that a very large number of bank notes, amounting, I believe, to more than $90,000, were due, and outstanding against the bank. If what has fallen from the bar be correct, this large amount remains yet unpaid. How was its payment provided for? Simply by the notes due to the bank, then outstanding, the productiveness of which could not be then ascertained, and the utter insolvency of the debtors has been since fully established. These notes, indeed, to an amount of more than $140,000 (including the stock notes, for the unpaid quarter part of the capital stock,) were due almost entirely from the directors of the bank, from whose official misconduct the stockholders ought certainly to derive no benefit, if they are not to be affected with any private responsibility.

The only other ground, suggested as a defence by the defendants is, that they have been guilty of no fraud, and that the division of the capital stock was an act authorized by law; and there is no equity to relieve the plaintiffs by throwing the loss on the stockholders. The answer to this argument, for such it is, has already been given. The stockholders have no right to any thing but the residuum of the capital stock, after payment of all the debts of the bank. The funds in their hands, therefore, have an equity attached to them, in favour of the creditors,

---

[5] See, also, Wendell v. Van Rensselaer, 1 Johns. Ch. 344; Wiser v. Blachly, 1 Johns. Ch. 437; Brasher's Ex'rs v. Vancortlandt, 2 Johns. Ch. 242; Van Vechten v. Terry, 2 Johns. Ch. 197.

which it is against conscience to resist. To be sure, the plaintiffs might, if their bill had been properly framed, have shown a much stronger case for equity, and might have shown due diligence in attempting to enforce their rights. I allude to the known facts of the various suits at common law, some of which have been cited at the bar, and others brought to this court for decision, in which great efforts have been made to obtain a remedy at law, by the bill-holders, without success.

The next question is, what sort of decree the plaintiffs are entitled to. Are they entitled to a decree, to the full amount of the dividends received by the defendants respectively, towards payment of the debts due from the bank to them, or are they entitled only to a pro rata payment out of that dividend, in the proportion, which the stock, held by the defendants, bears to the whole capital stock? The bill does not allege, that the other stockholders, who have received dividends, are insolvent, or out of the jurisdiction of the court. Nor does it state what the amount of the debts due from the bank to bill-holders, or others, is. It would have been desirable, as far as it was practicable, that all the other creditors, who had a common interest, might have been brought before the court. But neither party has urged it, or waived any formal objection to the introduction of them. The court, therefore, in proceeding to do equity to those before it, must take care that it is not the instrument of injustice to others who are not represented. Non constat, if the whole fund is taken from the defendants in favour of the plaintiffs, that there will remain any solvent stockholders, from whom the other creditors can claim any share. It is true, in the case of City of London v. Richmond, 2 Vern. 421, 1 Brown, Parl. Cas. 518, that, though all the parties in interest were not before the court, the full rent was decreed. But that case furnishes no rule for the present, for there the trustees of all the shareholders were before the court, and they were the assignees of the estate, and therefore held it liable to the rent. In the anonymous case in 2 Eq. Cas. Abr. 166, pl. 7, the decree was only for a proportion of the money expended. But there the bill asked for no more. I rather incline to think that the judges in the cases in 15 Mass. 505, and 16 Mass. 9, meant to indicate an opinion in favour of the bill-holders only for a proportion, unless special circumstances were made out, such as insolvency, &c.

What would be the effect of the introduction of an averment of the insolvency of the other stockholders, or their being out of the jurisdiction, or of other circumstances denoting a peculiar equity, in a bill of this nature, it is not now necessary to decide. See Madox v. Jackson, 3 Atk. 405; Attorney-General v. Jackson, 11 Ves. 365. Taking into consideration the manifest defects of the present bill, the long delay in instituting the present suit (which is not accounted for in any averments framed for this purpose,) the possible, nay, probable intermediate insolvencies of some of the stockholders, the injustice which may arise to other creditors of the bank, not before the court, by any other course, I have come to the conclusion, that our duty is best performed by holding the plaintiffs entitled to a decree, that the defendants pay out of the dividends of the capital stock received by them, so much of the debts due to the plaintiffs, as the number of shares held by them in the same capital stock (viz. 320 shares) bears to the whole number of shares in the capital stock (viz. 2,000 shares).

There is much force in the suggestion, that the corporation books have been withdrawn and secreted, so that the plaintiffs were unable originally to ascertain who the other stockholders were. But this difficulty might, in some measure, have been overcome by apt averments in the bill; and the disclosure of the names of several stockholders in the answers puts the plaintiffs in possession of facts, by which, at their choice, they might by an amendment have brought those persons before the court, or have assigned a sufficient reason for the omission.

My judgment accordingly is, that the defendants are to pay the plaintiffs, in the proportion already intimated, and no further. Decree accordingly, with costs.

In 2 Vern. 396, there is a note stating, that in the case between Dr. Salmon and the Hamburg Company, the members in their private capacities were made liable, the company having no goods. That case is not reported in any other book, and the circumstances of it are not therefore known.