Milli&AN J.,
delivered the opinion of the Court.
The prominent facts.of this record are agreed; and it is necessary to notice only a few of them, to raise the questions insisted on in argument, and upon which the case must turn. The Bank of West Tennessee possessed the ordinary franchises of banking associations in this State, among which was the power to issue and circulate its notes as money. Its organization was authorized upon the subscription of $450,000 in stock, divided into shares of $100 each. The necessary amount of stock was subscribed, and the corporation organized, and the bank put into successful operation, in the city of Memphis, in 1860, and continued in operation, under its charter, until a short time before the city was occupied by the military forces of the United States, in 1862, when its assets were removed, “ by duress,” further South, under the military orders of the “Confederate officers commanding at Memphis.” After the war terminated, the assets of the bank were brought back, and the old officers of the bank now have the custody and control of its assets; but they do not assume to exercise any of the franchises of the corporation, for the ordinary banking purposes.
The complainant held and owned a considerable amount of the notes or bills of the bank, upon which, at different times, he obtained judgments at -law, amounting, in the aggregate, to the sum of $27,321. Upon these several judgments, executions, at different periods, were issued, which were, respectively, returned, indorsed “nulla bona;” and this bill was then brought against the corporation and certain stockholders, alleging the indebtedness of the *474 latter to tbe corporation on their original subscription to the capital stock, and the existence of other assets, which could not be reached at law, and praying for a discovery, and the application of the assets, both legal and equitable, to the satisfaction of the complainant’s judgments at law.
The defendants failed to answer; but the parties, by consent, in writing, mutually admitted a state of facts, which, by agreement, were to be treated as a cross bill, and the legal questions thus presented, determined, as if a cross-bill had been regularly filed by the officers or agents of the corporation.
In addition to the facts already statéd, it appears, from the agreement of the parties, that the bank is embraced within the provisions of the Act of the Legislature, passed the 6th of February, 1860, ch. 27, commonly known as the “Bank Code,” and that its action has been in conformity to the provisions of that Statute, from the date of its organization, up to the time its assets were removed South, in May, 1862.
It is further admitted and agreed, that there are, in the hands of the old President and Cashier of the bank, assets, out of which the sum of $25,000 can be be realized; and that the bank is now insolvent, and its insolvency was complete at, and prior to, the time the complainant instituted proceedings against it, to enforce the payment of. its notes in his hands; and, as such, unable to redeem, or otherwise pay and satisfy its notes heretofore issued and put in circulation, and still outstanding, and in the hands of other holders unknown to the parties.
*475 The corporation, under our Statute, (Code, 3431,) is not, by virtue of its insolvency, formally dissolved; but, as it is alleged in the bill, and admitted in the agreement, it is not using its franchises further than to wind up its old business, and apply its assets. No fraud, by the agreed facts, or misapplication of the funds, on the part of the officers of the hank, seems to be imputed to them. The ruin that has overtaken the institution, is, perhaps, due alone to the unhappy effects of the war, and the arbitrary removal, by the military, of its assets South. But, from whatever cause its misfortunes occurred, the record clearly establishes the fact, that it is hopelessly insolvent, and that a just and ratable application of its entire available means to its creditors, will not redeem its outstanding circulation. It follows, therefore, that the controlling question in the record, is, whether or not, the remaining assets of the corporation, shall be distributed pro rata, under our Statutes, among. all the note holders, or applied, exclusively, to the satisfaction of the complainant’s judgments ?
This question is somewhat novel in this State, and, by no means, free from difficulty. But, we have been greatly aided in its investigation by the unusual research and ability with which it has been argued on both sides. Counsel have spared no pains in their examination of authorities, nor have they been wanting in ability to present their respective views of this question, in the strongest and clearest light of which it is susceptible. For the complainant, it is contended, with great force and ingenuity, that he has acquired a lien on the assets of the *476 bank, under the provisions of the Code, embraced in sections 4282, 4283, 4284, 4285, and 4286, which cannot be displaced by any subsequent action, either of the corporation or its creditors. And, on the other hand, the defendants insist, with equal zeal and ability, that the assets of an insolvent corporation, under our law, constitute a pledge, or trust fund, in the hands of the officers of the bank, for the equal benefit and security of all the note holders of the bank; and that no diligence, on the part of one or more of the note holders, can defeat the right of the others to a pro rata distribution of the fund.
Since the passage, by Congress, of the late Bankrupt Law, the practical benefit resulting from a solution of this question, will not, perhaps, be of much value to the people of the State; but it is, certainly, of great interest to the parties, and ought to be determined with the same care, as if it were to become the governing rule in all similar cases.
The law seems to be well settled, that, whenever property is devoted, by private contract, or by operation of law, to special purposes, to be held for the use, benefit, or security of a particular person, or class, it thereby becomes impressed with a trust character, a,nd it is held in trust, to answer the ends to which it was appropriated. This general doctrine, under certain circumstances, has been applied to banks and other monied corporations. Mr. Adams, in his excellent work on Equity, p. 229, 3d American edition, says: “ Where corporation property is directed to be applied first to *477 certain specific purposes, etc., a trust attaches on the property, giving jurisdiction, in equity, to control any improper dealing by the corporation.”
The same principle is recognized, in, perhaps, stronger and more direct terms, by Chancellor Kent, in the 2d volume of his Commentaries, marginal page 307, note A, where it is said: “ The rule of the common law, has, in fact, become obsolete and odious. It never has been applied to insolvent or dissolved monied corporations in England. The sound doctrine now is, as shown by Statutes and judicial decisions, that the capital and debts of banking and other monied corporations, constitute a trust fund and pledge for the payment of creditors and stockholders; and a Court of Equity will lay hold of the fund, and see that it be duly collected and applied.” See, also, 2 Story’s Eq. Jp., sec. 1252; Vase vs. Grant, 15 Mass. R., 505; Wood vs. Dummer, 3 Mason R., 308; Spear vs. Grant, 16 Mass. R., 9; Brigg vs. Penniman, 8 Cowan, 391; Branner vs. Harbeck, 5 Selden’s N. Y. R., 692; Guy vs. Tide Water Canal Co., 24 Howard, 257; Ohio Life Ins. Co. vs. Merchants’ Ins. Co., 11 Hum., 31.
The reasons upon which this doctrine rests, are so forcibly given by Judge Story, in delivering his opinion, in the case of Wood vs. Dummer, 3 Mason, 308, that we take the liberty of extracting from it the following paragraphs:
“It appears to me very clear, upon general principles, as well as the Legislative intention, that the capital stock of banks, is to be deemed a pledge or trust fund, for the payment of the debts contracted by the *478 bank. The public, as well as the Legislature, have always supposed this to be a fund appropriated for such purposes. The individual stockholders are not liable for the debts of the bank, in their private capacities. The charter relieves them from personal responsibility, and substitutes the capital stock in its stead. Credit is universally given to this fund by the public, as the only means of payment. During the existence of the corporation, it is the sole property of the corporation, and can be applied only according to its charter — that is, as a fund for the payment of its debts, upon the security of which it may discount and circulate notes. Why, otherwise, is any other capital stock required by our charters ? If the stock may, the next day after it is paid in, be withdrawn by the stockholders, without payment of the debts of the corporation, why is the amount so studiously provided for, and its payment by the stockholders so diligently required ? To me, this point appears so clear, upon principles of law, as well as common sense, that I cannot be brought into any doubt, that 'the charters of our banks, make the capital stock a trust fund for the payment of all the debts of the corporation. The bill holders, and other creditors, have the first claim upon it; and the stockholders have no right, until all the other creditors are satisfied. They have the full benefit of all the profits made by the establishment, and cannot take any portion of the fund, until all the other claims on it are extinguished. Their rights are not to the capital stock, but to the residuum, after all demands are paid. On a disposition of the corporation, the bill holders and the stockholders have each, equitable claims; *479 but those. of the bill holders possess, as I conceive, a prior exclusive equity.”
The doctrine, that the assets of an insolvent or dissolved banking, or other monied corporation, constitutes a pledge or trust fund for the payment of the corporation debts, is now so firmly settled, upon the plainest principles of reason and justice, as well as authority, that it cannot be shaken, or brought into doubt. The assets of such an institution are always liable for its debts; and if they are held by the corporation itself, and so invested as to be subject to legal process, they may be levied on by such process. But, if they have been distributed among stockholders, or gone into the hands of others than Iona fide creditors, or purchasers, leaving debts of the corporation unpaid, such holders take the property charged with the trust, in favor of the corporation creditors; and a- Court of Equity will follow the property, and enforce and compel its application to the corporation debts: 2 Story’s Eq. Jp., sec. 1252; Curran vs. The State of Arkansas et al., 15 How., 304; Mumma vs. The Potomac Company, 8 Peters, 281; Wood vs. Dummer, 3 Mason, 308; Wright vs. Petre, Smede’s & Marshall’s Miss. R., 319; Nevett vs. The Bank of Port Gibson, 6 Ind., 513; Hightower vs. Thornton et al., 8 Georgia R., 493; and Nathan vs. Whitlock, 3 Edward’s C. R., affirmed in 9 Page, 152.
But, admitting this doctrine, it is insisted, that the creditors of a corporation, can alone avail themselves, of it; and that the corporation, being itself the debtor, cannot, through its officers or agents, set up the trust, so as thereby to defeat the complainant’s lien, previously *480 fixed upon tbe assets, under our Statutes. To allow this, as it is argued, would be at war with the provisions of the Statute, as well, also, as the maxim, qui prior est tem-pore potior est jure; and enable the debtor to restrict the payment of his Iona fide debts, by pleading his inability to pay his other creditors who are not suing. This argument is, certainly, plausible and ingenious, but sound, as applied to the facts of this case.
The bill is avowedly founded on the provisions of the Code, contained in sections 4282 to 4286, inclusive. Section 4283, is principally relied on as embracing corporations, and is in the following language: “ The creditor, whose execution has been returned unsatisfied, in whole or in part, may file a bill in Chancery against the defendant in the execution, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action, or money due to such defendant, or held in trust for him, except when the trust has been created by, or the property so held has proceeded from, some person other than the defendant himself, and the trust is declared by Will, duly recorded, or deed duly registered.”
By the succeeding sections, 4284 and 4285, the Court is clothed with full power to compel the discovery provided for in the preceding section, and to prevent the transfer, payment, or delivery of the property, and to subject the same to the satisfaction of the judgment or decree, whether such property could, if in the defendant’s possession, or with the title vested in him, be levied upon by execution or not; and to order the execution of all such bonds or other instruments and trans *481 fers, by either party, as may be necessary to carry the jurisdiction into complete effect. And, by section 4286, the creditor -who thus brings his bill, is declared to have a lien upon the property of the execution debtor, from the filing of his bill; but he may acquire a lien from the rendition of the judgment or decree, by taking the steps authorized in this section, and prescribed in sections 2984 and 2985'.
The application of these provisions of the Oode to insolvent corporations, -when construed in connection with other sections, is, certainly, very indirect, if, indeed, they may be said to have any such application at all. It is clear, under section 4288, the creditor, by judgment or decree, after a return of the execution unsatisfied, in whole or in part, may file his bill against the defendant in the execution, and embrace in the bill any other person or corporation, secure his lien, and compel a discovery of any property, stocks, choses in action, belonging to, or money due to, such defendant, or held in trust for him; but it is not equally clear, from the language of the Statute, that such defendant may be an insolvent corporation, not using its franchises. It may be, and we think it is, true, as insisted by the complainant, that the provisions of the Code are broad enough to include corporations; but it does not follow, that the Legislature intended to break down all distinctions, in the view of a Court of Equity, between an insolvent corporation, not. using its franchises, and a solvent one, in the full exercise of all its powers and privileges. The Code itself sustains the contrary view, and certainly recognizes a distinction, which is in harmony with the *482 well settled doctrine on this subject. In the same chapter from which the sections relied on by the complainant, are drawn, the most ample provisions are made in favor of any creditor, without first having obtained a judgment at law, by bill in equity, to set aside fraudulent conveyances of- property, or other devices resorted to, for the ■ purpose of hindering or delaying creditors, and to subject the property to the satisfaction of his debts.
Immediately following these general provisions, in the same chapter, sec. 4294, the remedy against a corporation not using its franchises, is given, in the following language : “ The creditors of a corporation may, also, without first having obtained a judgment at law, file a bill in the Court of Chancery, to attach the property of the corporation, and subject the same, by sale or otherwise, to the satisfaction of their debts, when the corporation franchises are not used, or have been granted to others, in whole or in. part.” And, “In such cases,” section 4295 declares, “the Court may appoint a receiver, take an account of the affairs of the corporation, and apply the property and effects to the payment of debts, pro rata, and divide the surplus, if any, among the stockholders.”
These provisions of the Code are not in conflict with section 4283, which, although it may embrace corporations exercising their ordinary functions, cannot be held to comprehend an insolvent corporation, not using its franchises. By our law, a corporation is not dissolved by the non-use, or assignment to others, in whole or in part, of its powers, franchises and privileges, unless all the corporate property has been appropriated to the payment of its debts; and, in such cases, says the Code, *483 (section 3481,) “any creditor, for himself and other creditors, whether he has recovered a judgment or not, or any stockholder, for himself and other stockholders, may file a bill, under the provisions of this chapter, to attach the corporate property, and have such property applied to the payment of the corporation debts, and any surplus divided among the stockholders.”
Construing these sections together with sections 4294 and 4295, (which are, substantially, the same,) we cannot think that the Legislature intended merely to extend the remedy given by section 4283, to creditors generally; but to create a separate and distinct remedy against corporations found in a given condition, and in no way incompatible with the remedy given, in favor of any creditor, in sec. 4283. Otherwise, as in this case, a single creditor, who admits the insolvency of the corporation, and avers, in his bill, that it is not using its franchises, could, in a mere race of diligence, in which he, perhaps, enjoyed advantages over all competing creditors, obtain his judgment at law, file his bill first against such insolvent corporation, and sweep the entire assets away from all the other creditors, who, in the eyes of a Court of Equity, were generally entitled, with himself, to a ratable distribution of the corporate funds. This would be, manifestly, inequitable, and against the general doctrine on this subject, as well as the spirit, if not the very letter, of our own legislation.
It is not questioned, that the complainant might have brought a general creditor’s bill to wind up the bank, and shared ratably, with all the other bill holders in the assets; but, after he has abandoned whatever *484 remedy, if any, lie might have had at law, by the process of garnishment, and appealed to a Court of Equity, it would be going further than a Court of Chancery would feel warranted — especially when other creditors of equal grade are shown to exist — to enforce the pretended lien of the complainant upon the remaining assets of this corporation, to the entire exclusion of all other creditors.
The fund in which the note holders claim an interest, has been shown to be a trust fund, pledged for the payment of the corporation debts; and it is a doctrine of universal application in Chancery, that, whenever there is a trust fund over which a Court of Equity has jurisdiction, all parties interested therein as creditors, are to be paid pari passu, unless the law has clearly provided a different rule: 2 John. Ch. R., 567; 4 John. Ch. R., 642; 1 Vesey, 212; Barcroft et al. vs. Snodgrass et al., 1 Coldwell, 430.
Our Statutes, as we have attempted to show, have provided no such different rule; and the application of this principle, in the case under consideration, as it seems to us, is without embarrassment.
By the insolvency of the bank, the corporation was rendered incapable of pursuing the objects for which it was created, without defrauding the public and its existing creditors. Its officers, or agents, properly ceased to use its franchises after the insolvency was ascertained; but their responsibility as to the assets did not cease. They continued to hold them as before — not for themselves, or for the use and benefit of the stockholders ; but for the creditors of the corporation. While the bank *485 was solvent, and in tbe full use and enjoyment of all its franchises, the entire beneficial interest in its funds and assets, belonged to the stockholders; as the Court will, in the language of a Chief Justice, “for legitimate purposes, look through the technical definition of a corporation, as a mere legal existence, and contemplate it more substantially in the person’s interests it represents.” But, after the insolvency of the corporation, all the legal ownership of the assets may continue as before — the beneficial interest of the stockholders clearly no longer exists. A state of insolvency presupposes that the capital stock and assets are insufficient to meet its liabilities. The stockholders, having incurred no personal liability for the debts of the corporation, have, in point of fact, no interest in the disposition of the assets of the bank, after its insolvency. In equity, as well as at law, the beneficial interest therein belongs to the creditors. The capital is the fund they trusted, and to which, with the after acquired property or assets of the corporation, they can alone look for indemnity. Both stand pledged for the payment of the corporation debts, (16 Mass. R., 272,) and a Court of Equity will follow them into the hands of stockholders, or other persons receiving them with notice, for the benefit of the creditors.
From this view of the case, it seems to follow as a necessary consequence, after the admitted insolvency of the bank, and the non-use of its franchises, that the officers, or agents of the corporation, in whose hands the assets remain, held them as quasi trustees for the creditors, and, as such, may defend the right and title thereto of all the creditors, or cestui que trusts: Hill on *486 Trustees, 316. Otherwise, they would, after payment to a single creditor, as in this case, of all the assets, be without remedy.
But, independent of the character of trustees, or quasi trustees, which we have given to the officers or agents of an insolvent monied corporation, a Court of Equity will not tolerate such a manifest violation of the rules of natural justice, to be practiced by one creditor upon all the others, who stand upon the same ground occupied by himself, as to a common fund. A single creditor would, by no pretended legal technicality, be allowed to destroy the fund, or appropriate it all to his benefit, and thereby totally defeat all the others: Wood vs. Dummer, 3 Mason, 308; Clyne vs. The Tide Water Canal, 24 Howard, 262.
It is proper to remark, that, by the agreement of the parties, the Act of 1860, ch. 27, constitutes a part of the fundamental law of the Bank of West Tennessee; and, for that reason, we have treated the bill holders of the bank as a preferred class of creditors. The 30th section of that Act is in the following language: “That, in case of any insolvency of any bank or banking association, the bill holders thereof shall be entitled to preference in payment over all other creditors of such bank or association; and no transfer or assignment of any note, bill of exchange, or other evidence of debt, by the bank, shall prevent the debtor from paying the same in the hands of the assignee, in the currency of the bank.”
Without attempting to determine whether the Act of 1860, ch. 27, by its own vigor, impresses the assets *487 of an insolvent lank governed by it, with the character of a trust fund, it will he sufficient to say, it very clearly classifies the creditors of such institutions, when insolvent. The note or bill holders are preferred to all other creditors; and, of necessity, the general creditors next, and the stockholders last.
The Act of 1865, ch. —, recognizes the same principle and order of payment, in cases of assignment by the old banks of this State; but we need not further elaborate this case, as the Act of 1860, ch. 27, must govern the distribution of the assets.
The decree of the Chancellor will be reversed, and a decree entered here in accordance with this opinion.