# The Germantown Passenger Railway Company *versus* Fitler.

60  124
164 334
60  124
175 497
60  124
217 10156
32 SC 1520

1. A power given to a corporation to forfeit stock must be strictly pursued, and if any restrictions have been disregarded the forfeiture will be declared invalid.

2. Equity does not relieve against a forfeiture of stock, if regular.

3. A stockholder being a member of a corporation must be presumed to know the terms of his subscription.

4. At the end of the time after notice allowed by the charter to pay instalments on stock, the power to forfeit the stock was perfect.

5. The entire capital of a corporation is a trust fund for payment of its debts.

6. The unpaid subscriptions are part of the assets of a corporation, and a general assignment for the benefit of creditors passes them to the assignee.

7. The assignee can proceed only in the name of the corporation, and must show that the provisions of the charter have been pursued.

· 8. A chancellor will compel directors to call for subscriptions when his aid is invoked by creditors or their representative.

9. When a company ceases to keep up its organization, and abandons all action under its charter, the intervention of equity for creditors becomes indispensable.

[Germantown Passenger Railway Co. *v.* Fitler.]

10. A corporation is not necessarily dissolved by its insolvency, nor by a writ of sequestration. Its franchises, not capable of assignment, must be exercised by it but in subserviency to its legal and equitable obligations.

11. When the debts of a corporation require it, it is the duty of the managers to call for unpaid subscriptions. Their discretion relates only to the time and manner of the making the payments.

12. As a forfeiture of stock extinguishes all the rights and liabilities of the stockholder, the creditors can object to it, and invoke the aid of equity to prevent it or set it aside.

13. The right to make calls is a franchise vested in the managers, whose lawful exercise can be objected to only by creditors or their representative.

14. If on the ground of notice of an assignment for benefit of creditors, stockholders object to pay the treasurer, they should make a tender to the assignee, and if he will not accept they have an equity to be relieved from forfeiture.

15. Nothing will call a court of equity into activity but conscience, good faith and reasonable diligence. When these are wanting the court is passive and does nothing.

January 5th 1869.    Before Thompson, C. J., Read, Agnew and Sharswood, JJ.    Williams, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Philadelphia:* In Equity: No. 256, to January Term 1868.

The proceedings in the court below were commenced, November 12th 1863, by a bill filed by Alfred Fitler against The Germantown Passenger Railway Company. The object of the bill was to compel the defendants to issue to the plaintiff certificates for 250 shares of their stock, for which he had originally subscribed, and which the directors of the company had declared forfeited for non-payment of instalments.

The company was incorporated by virtue of an Act of Assembly of the 21st of April 1858, with a capital of $200,000, divided into shares of $50 each. The plaintiff became a subscriber for 250 shares, and paid the first instalment of $5 per share. The act provided "That if any stockholder shall omit for the space of six months to pay any instalment which may be called for, the managers of the company may either declare the shares of stock on which the instalments are unpaid as aforesaid to be forfeited, or may at their option bring suit to recover the said instalments," &c. By a supplement of March 22d 1859, the company was authorized to increase their stock to 10,000 shares. The company having become embarrassed, they assigned all their property to Lewis Seal, for the benefit of creditors, on the 22d of December 1859. About the beginning of 1860 Charles E. Lex, Esq., was substituted for Mr. Seal as trustee or assignee. About the same time he was appointed assignee of Joseph Singerly, the principal creditor of the company. Except for a short time after his appointment, Mr. Lex did not take any active part in relation to the railway, which had been completed and was in use in carrying passengers. It was committed by him mainly to the direction of

[Germantown Passenger Railway Co. *v.* Fitler.]

the managers. He stated in his testimony that when he found they were going on well, he took the responsibility of letting Mr. Singerly and his road work themselves out of their difficulties. At the time of the assignment, almost the only debt of the company was due to Singerly for the construction of the road. His debt, by a settlement made with the company on the 9th of August 1860, appeared to he $296.860.98. Mr. Singerly was the holder of a large amount of stock on which instalments were due. At the time his account was settled, the company was credited on his indebtedness to the amount of the instalments due, and he was paid $175,000 in the bonds of the company, being at the rate of 70 per cent. on the face of the bonds. This was with his consent. On the same day the managers, for the purpose of meeting the payments of the company, resolved to call in the second instalment of $5 per share on the stock, payable on the 1st of October then next. This instalment was paid by the plaintiff. On the 3d of October it was resolved that another instalment of $5 per share be called, payable on the 5th of November then next. Notice of the calls for instalments were published in "The Press" and "The Inquirer," the call for the third instalment having been published from the 5th of October to 5th of November 1860. It appeared that at the time of the calls the stock had no market value, but afterwards advanced greatly in value. The assignee, Mr. Lex, gave no directions for calling in the instalments, nor did he call in any himself. The complainant called on Mr. Lex about paying the third instalment. He showed Mr. Lex the advertisement, and asked him if he assented to it, to which Mr. Lex replied "No;" and after some further conversation the complainant said, "Then I will not make any more payments." On the 16th of November 1860 Mr. Lex addressed this note to the treasurer of the company :—

"I received yesterday, accounts for September and October. I notice an item for instalment—with that I have nothing to do, and it should not come into my account.

"I cannot recognise, as assignee, the calling in of any instalment on the stock, or agree to pay them on Mr. Joseph Singerly's stock."

On the 3d of July 1861 the managers of the railway passed the following resolution :—

"That each and every share or shares of stock in this company on which any instalment or part of an instalment is unpaid at this date, and has so remained unpaid and in arrear for the past six months, together with all the right, title and interest of each and every delinquent stockholder and stockholders therein, be and the same is hereby forfeited to the use of the company."

On the 26th of December 1865 the managers passed the following resolution :—

[Germantown Passenger Railway Co. *v.* Fitler.]

"Whereas, by a resolution passed by the board of managers of the Germantown Passenger Railroad Company, July 3d 1861, all the shares of stock standing upon the books of this company, upon which the second and third instalments had not been paid, and also that upon which the second instalment had been paid, but the third instalment had *not* been paid, were declared forfeited, and by the forfeiture the following shares of stock standing on the books of this company, to the credit of the parties herein named, become the property of this company, to wit, Alfred Fitler, 250 shares," with a large number of others, naming them.

The pleadings and proofs showed the foregoing facts:—

The plaintiff in his bill further averred that on the 23d of October 1863 he tendered to Mr. Lex $1250 for the third instalment; that Mr. Lex was willing to accept the money, but refused to accept it as an instalment on the stock; that he made a similar tender to the treasurer of the company, which was also refused. He also averred that the managers did not forfeit or intend to forfeit the stock of Singerly, who owned more than half of the shares and owed instalments upon them.

The defendants, in answer to these allegations, averred that the offer to pay was made to Mr. Lex on condition that he would allow a transfer of the stock; that Mr. Lex said he had not power over the transfer of the stock, but if the defendant would leave the money he would make application to the board of managers to allow the transfer; that the offer to pay the treasurer was on the same condition; he replied he was willing to receive the payment, but could not comply with the condition; the defendant then refused to pay the 'money. They also denied that they had omitted forfeiting any stock upon which instalments were due, and averred that no instalments were due on Singerly's stock.

The prayers of the bill were:—

"That it may be decreed that the acts and doings of the said defendants shall be declared void and of no effect, so far as they relate to the said two hundred and fifty shares of stock in said company, heretofore standing in the name of the complainant, upon his compliance with such terms as the said court may deem just and equitable in the premises.

"2. That said defendants and its officers be enjoined from disposing said stock to any person or persons other than as said complainant may order and direct by transfer upon the books of the company.

"3. That said defendants be enjoined from taking and applying the said stocks to the use of the said company, or any other person than this complainant, or to such person to whom he may assign the same.

"4. That the said defendants and the officers of said company be enjoined from continuing to refuse to permit the complainant

[Germantown Passenger Railway Co. *v.* Fitler.]

to transfer and assign said stocks on the books of the company to any purchaser or purchasers thereof."

On the — day of December 1867, the court (Allison, P. J.) decreed "that the acts and doings of the said defendants in calling for the third instalment, and in forfeiting complainant's stock are declared void and of no effect, so far as they relate to the 250 shares of stock in said company heretofore standing in the name of the complainant, and that the said company do cause 250 shares of stock to be restored to the name of the said complainant, subject to all lawful calls for all instalments to be made on said stock, and that said company do issue to him a certificate for said stock in usual form, upon his surrendering any certificate he may now hold to be cancelled, and defendant to pay all the costs of his suit."

The defendants appealed, and in a number of specifications assigned the decree for error.

*R. C. McMurtrie* and *H. M. Phillips*, for appellants.—The question is whether the action of the managers, the creditors consenting by their representative the assignee, was void. The managers could be compelled to call in instalments to pay debts, and this cannot be suspended because of insolvency: Mann *v.* Pentz, 3 Comst. 422. A receiver cannot sue for instalments, the remedy is in equity for contribution by all the stockholders to pay all the debts: Angell & Ames on Corporations, § 602; Ward *v.* Griswold Manuf. Company, 16 Conn. 593. The managers have a discretion as to the time and manner of making calls: Henry *v.* Vermillion Railroad, 17 Ohio 187; Nathans *v.* Whitewill, 9 Paige 152. A creditor can enforce against a stockholder only such right as the corporation could: S. C. Man'g. Company *v.* Bank, 6 Rich. Eq. 227. The power to forfeit is a franchise which is not assignable: Ammant *v.* Turnpike, 13 S. & R. 212; Angell & Ames on Corporations, § 191. Where creditors have consented to a compromise between the corporation and stockholders they cannot enforce further payment: Slee *v.* Bloom, 19 Johns. 480. A stranger cannot call in the aid of a chancellor: Heath *v.* Knapp, 4 Barr 229. This was an election to rescind a bargain for non-performance: Small *v.* Herkimer Man'g. Company, 2 Comst. 335. There having been laches by the plaintiff's delay, equity will not interfere. There is no room to relieve from forfeiture, it having been given by statute: Small *v.* Herkimer Man'g. Company, *supra;* Angell & Ames on Corp., § 551; 2 Story's Eq., § 1325, 1326; Sparks *v.* Liverpool, 13 Ves. 434; Pendergast *v.* Turton, 1 Younge & Coll. 98; Doloret *v.* Rothschild, 1 Sim. & Stu. 590; Stubbs *v.* Lister, 1 Younge & Coll. Eq. 94. This is not a case for equity: Mason *v.* Armitage, 13 Ves. 37; Batten on Specific Perf. 125.

[Germantown Passenger Railway Co. v. Fitler.]

*G. H. Davis* and *E. K. Price*, for appellee.—The court had jurisdiction: Act of June 16th 1836, § 13, Pamph. L. 789, Purd. 400, pl. 1, Art. V.; Commonwealth v. Bank of Penna., 3 W. & S. 193. The instalments were assets in the hands of the assignee: Railroad v. Clarke, 5 Casey 146. Recoverable by the assignee: West Chester Railroad Co. v. Thomas, 2 Phila. R. 344; Dana v. Bank U. S., 5 W. & S. 223, 243; Wash. B. Soc'y. v. Bacher, 8 Harris 429. None but the assignee could give a discharge: Comstock v. Manufacturing Co., 2 Comst. 330. A creditor by bill can compel a stockholder to pay: Mann v. Pentz, Id. 415. The managers must act with the approval of the assignee: McBroom's Appeal, 8 Wright 94; Angell & Ames on Corp., §§ 545, 575, 577; Nathan v. Whitewill, 9 Paige 152; Rankin v. Elliott, 16 N. Y. 377; Wood v. Dummer, 3 Mason 308; 1 Redfield on Railways 168. Forfeiture requires strictness of proceedings: Sharon Iron Company v. Erie, 5 Wright 346; Clarke v. Strickland, 2 Curtis C. C. 439; Railroad v. Staples, 5 Gray 520. The plaintiff should have had notice: Duppa v. Mayo, 1 Saund. R. 287, n. 16; Royer v. Ake, 3 Penna. R. 464; Brown v. Hummell, 6 Barr 91; Davis v. Funk, 3 Wright 243; Commonwealth v. Benf. Inst., 2 S. & R. 141; Commonwealth v. The Germ. Society, 3 Harris 251; Angell & Ames, § 420; Corliss v. Corliss, 8 Vt. 389; 5 Gray 520; McCully v. Pitts. & Connel. Railroad, 8 Casey 25. A slight circumstance will avoid a forfeiture: Stubbs v. Lister, 1 Younge & Coll. 816; Railroad v. Graham, 1 Am. Railway Cases 598. The forfeiture was declared after the bill had been filed, and was therefore in contempt: Clark v. Martin, 10 Am. Law Reg. 479. Payments due on stock are assets or capital of the corporation, and may be sued for by creditors by bill in equity: Angell & Ames, § 599, 600; Wood v. Dummer, 3 Mason 308; Vose v. Grant, 15 Mass. R. 517; Spear v. Grant, 16 Id. 9; Catlin v. Eagle Bank, 6 Conn. R. 233; Hartford and N. H. Railroad v. Kennedy, 2 Am. Railway Cases 9; McBroom & Wood's Appeal, 8 Wright 94: Angell & Ames, § 517. "Assignee is the representative of the creditor and company:" Curtis v. Leavitt, 15 N. Y. 230; Redfield on Railways 77, § 609; Gillet v. Moody, 3 Comst. 479; Beeler v. Turnpike Company, 2 Harris 162. Interest of trustee exactly that of the insolvent: Krause v. Beitel, 3 Rawle 199. "Assignment devolves a personal duty which cannot be delegated to another:" Small v. Ludlow, 1 Hilton C. P. (N. Y.) 189. "Powers given for one purpose cannot be used for another and different one:" 5 De Gex, Macnaghten & Gordon 298; Redfield on Railways, old ed. 72, and note; Angell & Ames 601, § 550; Giles v. Halt, Id. 602; 2 Am. Railway Cases 26. "If compensation can be made, equity will relieve from the penalty:" 2 Story, § 1314, 1321; 2 Johns. Chan. R. 534.

10 P. F. Smith—9

[Germantown Passenger Railway Co. *v.* Fitler.]

The opinion of the court was delivered, January 14th 1869, by Sharswood, J.—The Germantown Passenger Railway Company was incorporated, with a capital of 4000 shares of $50 each, by Act of Assembly, approved April 21st 1858, Pamph. L. 494, and by a supplement of March 22d 1859, Pamph. L. 284, the stock was increased to 10,000 shares. The plaintiff below, after this supplement, became entitled to 250 shares, and paid in two instalments of $5 on each share. A third instalment of the same amount he refused to pay, and the directors declared his shares forfeited. He filed this bill in the court below to have this forfeiture declared null and void, and the court decreed accordingly upon bill, answer and proofs, and that the company should cause 250 shares of stock to be restored to the name of the complainant, subject to all lawful calls, and issue to him a certificate for said stock in usual form, upon his surrendering any certificate he may now hold to be cancelled.

The grounds upon which this decree was made appear by the opinion below, and the course of the argument by the able counsel of the appellee, to be reducible to two. First, that no notice was given to the plaintiff of the intention of the directors to forfeit the stock. "In analogy," says the opinion, "to proceedings in court, should not a rule to show cause first go against him, or a demand in the nature of a scire facias issue, which would give notice that at a place and on a day certain, judgment of forfeiture would be entered if the alleged default was not repaired?" We must look to the charter for the power of the directors to forfeit the stock. No doubt the power given must be strictly pursued, and if any restrictions or limitations there provided have been disregarded, the alleged act of forfeiture must be declared invalid. This is so for the special reason that it is one of those forfeitures against which, if regular, equity does not relieve: 1 Redfield on Railways 214. By the 5th section of the charter of this corporation it is provided, "that if any stockholder shall omit, for the space of six months, to pay any instalment which may be called for, the managers of the company may either declare the shares of stock, on which the instalments are unpaid as aforesaid, to be forfeited, or may at their option bring suit to recover the said instalments with interest, at the rate of 12 per cent. per annum, as debts of a like amount are by law recoverable against the person or persons appearing by their books to be the owners of those shares." It is not pretended that the call was not duly made and published, that the plaintiff had not personal notice, and that six months had not elapsed before the forfeiture was declared. Where, then, is the provision of the charter that requires any other or further notice? The plaintiff, as a subscriber to the stock and a member of the corporation, must be presumed to know its terms. He knew, then, that he had six months to pay,

but that at the expiration of that time his stock could be declared to be forfeited. That equity will not relieve against such a forfeiture has been a settled doctrine of the court ever since Sparks *v.* Liverpool Waterworks, 13 Ves. 428. The reasoning of Sir William Grant in that case admits of no answer. He considered the charter as a contract between the subscribers. " The parties might contract upon any terms they thought fit, and might impose terms as arbitrary as they pleased. It is essential to such transactions. This struck me as not like the case of individuals. If this species of equity is open to parties engaged in these undertakings, they could not be carried on. It is essential that the money should be paid and that they should know what is their situation. Interest is not an adequate compensation, even among individuals, much less in these undertakings." It follows that at the expiration of six months, the time limited in the charter, the power of the managers to forfeit the stock was perfect, and the defaulting stockholder could claim no further delay or any other notice than he had already received.

The second ground of objection to the forfeiture is, that before the call in question was made, the company had made a general assignment for the benefit of its creditors, and that the call was unauthorized by the assignee. This, indeed, is the principal contention, and it has received, as it deserves, careful consideration. It is certainly an acknowledged principle that the entire capital stock of a corporation is a trust fund for the payment of its debts : Wood *v.* Dummer, 3 Mason 308 ; Mann *v.* Pentz, 3 Comst. 422. The unpaid subscriptions to its stock are a part of its assets, which can be made available in equity by the creditors, and therefore a general assignment for their benefit passes them to the assignee : West Chester and Philadelphia Railroad Company *v.* Thomas, 2 Philada. R. 344. It is, however, but the assignment of a chose in action, and the legal title being still in the corporation, the assignee can proceed only in their name, and must be able to show that the provisions of the charter have been pursued so as to give the company the right; in other words, that a call for the unpaid capital has been duly made, and by the proper authority. It was said by Chancellor Dessaussure, that where the funds of a corporation are not whole and tangible, but consist in the liability of the members to be assessed, a court of equity will lend its aid in favor of a creditor of the company to assist him in enforcing the payment of instalments required by the members, and will apply the fund so raised to discharge the debt. It is as if it were a subrogation to the rights of the company : Hume *v.* Winyaw and Wando Canal Co., 1 Car. Law Jour. 217 ; and this language is cited with approbation in Washington Beneficial Society *v.* Bacher, 8 Harris 429. A chancellor will consequently compel the directors to make the calls required by the charter, whenever

[Germantown Passenger Railway Co. *v.* Fitler.]

his aid is invoked by creditors or the representative of creditors. There is a moral obligation both upon the officers and the stockholders to use the property and claims of the company as far as they will reach, to satisfy the demands of creditors, and when the company cease to keep up their organization, and abandon all action under their charter, then the intervention of equity becomes indispensable: Henry *v.* Vermillion and Ashland Railroad Company,. 17 Ohio 187. The members of a corporation would not be allowed to shake off their responsibility by a dissolution, any more than by a division of the paid-up capital among themselves: Wood *v.* Dummer, 3 Mason 308. But a corporation is not necessarily dissolved by its insolvency; not, as has been held, by a writ of sequestration operating as a legal divestiture of all its available assets: Mann *v.* Pentz, 3 Comst. 422; much less, it would seem, by a voluntary assignment for the benefit of creditors. If it keeps up its organization it still exists in law, and its franchises and powers, not capable of assignment, must be exercised by it, but in subserviency to its legal and equitable obligations. The discretion of the managers, as has been well said, as to calls, is modal merely, relating to the time and manner of making payments. When the debts of the company require the calls to be made, it becomes the duty of the managers to make them, as much so as to collect other debts due to the company. It is not discretionary with them to say whether the debts of the corporation shall be paid or not, when they have the means at command: Ward *v.* Griswold Manufacturing. Company, 16 Conn. 601. As a forfeiture of the stock extinguishes all the rights and liabilities of the shareholder—all title of the corporation to recover what may be due upon it—it follows that the creditors by whom the money is needed can object to such action and invoke the interposition of a court of equity to prevent it or set it aside: Small *v.* Herkimer County Manufacturing Company, 2 Comst. 330.

It would seem from this course of reasoning that it was the right and the duty of the assignee of the Germantown Passenger Railway Company to require the managers to make the calls necessary to enable them to settle with their creditors. He appears not to have considered the unpaid instalments as assets coming to him under the assignments. He understood very well, however, that he took the course he did on his own responsibility. "When I found things going on well," as he states in his testimony, "I took the responsibility of letting Mr. Singerly and his road work themselves out of their difficulties." The event justified his confidence. Though he may not have assented to the calls, it is certain that with full knowledge he took no steps to prevent them, or the forfeiture of shares on non-payment. This was a power or franchise which, beyond all question, was vested in the board of managers, and no one had any right to object to its

[Germantown Passenger Railway Co. v. Fitler.]

lawful exercise except creditors, or the representative of creditors. Had the stockholders objected to the payment of their subscriptions under the calls to the treasurer of the company, on the ground that they had notice of the assignment, their duty was to tender the amount to the assignee, and then if he had refused to accept it, they would have had a clear equity to be relieved from any attempted forfeiture. The plaintiff below, so far from taking this course, appeared to have concluded that because the assignee had not expressly authorized the call, he was not bound to pay any attention to it. If this were so, it was incumbent upon him promptly to take the proper measures to enjoin the proceedings. He could not sleep on his rights, and take the chances of a favorable turn of affairs. When the call was made the stock was without market value. There were but two instalments paid up, and each share was subject to a further call of $40. Even the bonds of the company were not and could not be sold for fifty cents on the dollar. The last call was made October 3d 1860, payable on or before the 5th of November following. He lay by for three years, until the 10th of November 1863, when he filed his bill in the court below. In the mean time the company had emerged from its difficulties, paid its floating debts, and the stock had become valuable. He is now willing and desirous to take it subject to all the unpaid instalments. It would be strange equity to allow a party thus to speculate upon contingencies. The forfeiture relieved him from all the obligations of his subscription. Neither the company nor the assignee could have pretended to enforce those obligations. Thus he alone would be allowed to play fast or loose. Equity aids the vigilant and active, not the sleeping and indolent. "Nothing," in the language of Lord Camden, "can call forth this court into activity but conscience, good faith and reasonable diligence. When these are wanting the court is passive and does nothing:" Smith v. Clay, 3 Bro. C. C. 639 note.

> Decree reversed, and now bill dismissed at the costs of the appellee.