## Cheltenham Township v. Philadelphia Rapid Transit Co.

*Street railways — Contract with township — Maintenance of passageway across highway—Taking over of road by State Highway Department—Equity —Parties—Act of May 31, 1911.*

Where a street railway company has contracted with a township, in consideration of the privilege of using a highway, to maintain passageways over the highway, such contract may be enforced by the township in a court of equity in its own name, notwithstanding the highway has, under the Act of May 31, 1911, P. L. 468, been taken over by the State Highway Department.

Demurrer to bill. C. P. Montgomery Co., June T., 1923, No. 6.

*Evans, High, Dettra & Swartz,* for plaintiff.

*Larzelere, Wright & Larzelere,* for defendant.

WILLIAMS, J., June 6, 1924.—On June 12, 1894, the complainant, by agreement in writing, granted to the Philadelphia, Cheltenham & Jenkintown Railway Company, its successors, lessees and assigns, the right and privilege of constructing and operating, on the bed of the Old York Road, through the complainant, a passenger railway, with turnouts and appliances, to be operated by electricity and of running on the railway the cars and motors of the company. In consideration thereof, the grantee covenanted, promised and agreed to and with the complainant to maintain, at the intersection of every township road in the complainant, a good and sufficient safe and smooth passageway across the Old York Road of the width of the intersecting road.

In due and regular course, the defendant became the legal successor of the above named covenantor and, as such, operates throughout the complainant, upon and along Old York Road, a passenger railway having a track on either side of the highway.

By the Act of Assembly approved May 31, 1911, P. L. 468-533, section 6, P. L. 472-513, Old York Road was constituted a part of Route One Hundred and Fifty-one—from Philadelphia to Doylestown—P. L. 491, of the system of state highways and, in accordance with section 5, P. L. 471-2, of the act, on or before June 1, 1912, was taken over by the State Highway Department which, ever since, has constructed, improved and maintained the central part of the highway situate between the trolley tracks.

At the intersection with Old York Road of every township road in the complainant, the defendant, in order to maintain a good and sufficient safe and smooth passageway across Old York Road, has, until lately, kept in repair, of the width of the intersecting road, the portion of the state highway lying betwixt the rails of each track. Recently, however, at the intersections of nine township roads, because of decaying and rotted ties beneath the rails, the trolley tracks have fallen considerably below the level of the highway and, in consequence, the parts of the intersecting roads located

between the rails have become so rough and full of holes as to render vehicular traffic thereover difficult and dangerous.

To the bill alleging the foregoing facts and praying that the defendant be immediately required, at the intersections in the bill enumerated, to repair those portions of Old York Road which lie between the rails of the trolley tracks, the defendant has filed the above demurrer. All of the reasons given in support thereof are based upon the provision contained in the said 5th section of the Act of May 31, 1911, P. L. 468-533, to the effect that where, at the time of the passage thereof, an agreement existed between any street railway company and any township, the terms of which required said street railway company to maintain any highway which was so designated under that act as a state highway, the said agreement should remain in force and the state should succeed to and take over to itself all the rights of said township existing under said agreement and that said street railway company should be bound to carry out all the requirements and comply with all the terms and conditions of said agreement with the state the same as though the said agreement had been made originally between the state and said street railway company; by virtue of which provision it is claimed by the defendant that the complainant no longer has any right, legal or equitable, in the consent agreement of June 12, 1894, that the complainant has lost, among other privileges, the prerogative of enforcing the contract made with it by the predecessor of the defendant and that the complainant is now powerless to compel the defendant to remove the nine menaces to the traveling public which the latter, in defiance of solemn obligation, permits to remain and continue.

First of all, it is to be noted that there is no implied denial that it is the express duty of the defendant to maintain at the intersections in question the passageways across Old York Road demanded by the complainant. The defendant, while apparently conceding its legal obligation to perform the act called for, seeks to avoid doing its plain duty on the sole ground that the right of the complainant—to whom the promise was originally made—to compel performance has since been wiped out by the legislative branch of the state government. Under such circumstances, it ought to be an unusually strong case, indeed, which would prevent the equitable hand controlled by the judicial arm of the Commonwealth from being interposed for the prevention of the triumph of an attitude so lacking in ethics and good morals.

It is to be observed, also, that the defendant fails to urge that the assertion of the right to smooth passageways across the state highway by the complainant would affect the defendant one jot or tittle more adversely than if the State Highway Commissioner should compel the living up to the written word by which the defendant is bound. Whether the township or the state secures specific performance, it is one and the same contract which the defendant must keep. In either event, the duty of performance is identical.

It is to be noted, too, that section 5, supra, refers to an agreement between a street railway company and a township requiring the railway company to maintain a highway which was designated by the Act of May 31, 1911, P. L. 468-533, as a state highway, whereas the agreement upon which the complainant relies was a contract to maintain a passageway across a highway so designated. The Act of 1911 evidently contemplated a contract for the lengthwise maintenance of a state highway. The agreement upon which the complainant stands referred to the longitudinal maintenance of a township, or non-state, highway transversely over a state highway. Fundamentally, the two underlying ideas prompting the passage of the act and the making of the

consent contract, respectively, are as far apart as east and west are from north and south.

It is to be observed, likewise, that the promise to maintain the smooth passageways across Old York Road constituted the consideration for the consent of the complainant to the construction of the passenger railway. If there had been no so antecedent covenant on the part of the railway company, there would have been no subsequent trolley tracks on the highway. Hence, to sustain the contention of the defendant would be to take away from the complainant the fruits of a bargain into which it entered in good faith, to deprive it of a continuing benefit in anticipation of which it parted with a valuable franchise. Surely, the Act of May 31, 1911, P. L. 468-533, should not be so construed unless such construction be unavoidable.

Furthermore, it may well be that the very judicial interpretation sought by the defendant to be given to the mooted provision of section 5, *supra*, would render the whole provision void as being in conflict with the Constitution of Pennsylvania, art. XVII, § 9, which says that no street passenger railway shall be constructed within the limits of any township without the consent of its local authorities. This provision of the constitution is peremptory and unlimited. It diffuses the pervading intent of the entire instrument to give local bodies the control of local affairs. It is a gift, without expressed limitations, directly from the constitution to the local bodies. As it needs no help from the general assembly, it brooks no interference by the legislature. If any limitations are to be implied by the courts, such limitations must arise from clear necessity and be as absolute, as permeptory and as unavoidable as the constitutional mandate itself. The burden, therefore, is on the party affirming that the exercise of the local authority is not valid: Allegheny City v. Railway Co., 159 Pa. 411, 415 (1893), Mitchell, J.

Moreover, to follow the argument of the learned counsel for the defendant to the bitter end, it is conceivable that if the legislature has the power to strip the complainant of every right under an agreement based on a valuable consideration, the general assembly, by appropriate legislation, may also confiscate all interest of the defendant in the contract. If it may say to the township, "Gone is your right to demand for the protection of the traveling public smooth passageways across our state road," it is not impossible that it may likewise exclaim to the defendant, "Away with your privilege of operating a railway along our state highway." The latter, we assume, is about the most remote act for which the defendant would call.

Finally, if every right of the complainant in the consent agreement was obliterated by section 5, *supra*, then the Act of 1911 worked an absolute assignment of the contract and, a breach having occurred, suit may still be brought in the name of the complainant, the assignor of the chose in action.

In general, as between the original parties, action on a contract, whether express or implied, whether by parol or under seal or of record, must be brought in the name of the party in whom the legal interest in such contract was vested: Guthrie v. White, 1 Dall. 268 (1788), and Cummings v. Lynn, 1 Dall. 444 (1789). Where the contract is for the benefit of the contracting party and the third person is a stranger to both the promise and the consideration, the action must be by the promisee: Blymire v. Boistle, 6 Watts, 182, 193 (1837), Sergeant, J. Neither at law nor in equity is a bare recipient a party to a contract. There is no contract with him, because no consideration moves from him to support one. The plaintiff must unite in his person both the promise and the consideration; and, if the action in such case cannot be sustained on the foundation of the consideration by drawing the

promise to it, it cannot be sustained at all: Edmundson v. Penny, 1 Pa. 334, 335 (1845), Gibson, C. J. The legal interest of a contract that has been assigned remains in the assignor, in whose name the action must be instituted: Germantown Passenger Ry. Co. v. Fitler, 60 Pa. 124, 131 (1869), Sharswood, J. In Pennsylvania, the rule is that the suit must be brought in the name of the holder of the legal title: Levy v. Levy, 78 Pa. 507, 511 (1875), Paxson, J.; Osborn v. First National Bank, 175 Pa. 494, 497 (1896), Mitchell, J.; and McNulty v. O'Donnell, 27 Pa. Superior Ct. 93, 95 (1905), Porter, J.

And now, June 6, 1924, after hearing, the demurrer is overruled and the defendant is required, within thirty days of this date, to answer the bill.

From Aaron S. Swartz, Jr., Norristown, Pa.