BENJAMIN E. MAY, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 76785, 76880, 76881, 76882, 76883.

Promulgated November 18, 1936.

*Herbert J. Haas, Esq., Joseph F. Haas, Esq.,* and *Bertram S. Boley, Esq.,* for the petitioners.

*Ralph E. Smith, Esq.,* for the respondent.

---

[1] The following cases were submitted on the same stipulation of facts and were consolidated for hearing: Benjamin E. May, Docket No. 76785; Alvin H. Fuller, Docket No. 76880; Joseph May, Docket No. 76881; Arthur I. May, Docket No. 76882; Benjamin F. May, Docket No. 76883.

OPINION.

ARUNDELL: The two issues involved here are (1) whether the petitioners are liable as transferees of the French Dry Cleaning Co. under section 311 of the Revenue Act of 1928, and (2) the value of the stock of the Atlanta Laundries, Inc., which was distributed to petitioners as stockholders of the French Dry Cleaning Co. In a prior proceeding before this Board a deficiency in income tax for the year 1928 was determined against the French Dry Cleaning Co. in the amount of $12,299.11, arising out of its profit from the exchange of almost all of its assets for cash and stock in the Atlanta Laundries, Inc. Our determination was affirmed on appeal by the Circuit Court of Appeals for the Fifth Circuit. *French Dry Cleaning Co.* v. *Commissioner*, 72 Fed. (2d) 167. The collector of internal revenue made due effort to collect this deficiency from the French Dry Cleaning Co. and on November 15, 1933, issued a warrant of distraint which was returned unsatisfied. Deficiencies were then proposed against each of the petitioners as transferees of the assets of the French Dry Cleaning Co.

The first issue is whether the petitioners are liable as transferees. Each of them received assets from the French Dry Cleaning Co. after its tax liability arose, but it is the petitioners' position that none of the distributions were made while the company was insolvent or served to render the company insolvent and therefore no transferee liability was incurred. The company ceased to do business as of January 1, 1928, when most of its assets were transferred to the Atlanta Laundries, Inc., and thereafter it conducted no business except such as was incidental to its liquidation. There was a series of distributions to stockholders, beginning on May 29, 1928, when the stock of the Atlanta Laundries, Inc., held by the French Dry Cleaning Co. was distributed to its common stockholders in exchange for all of the outstanding common stock, of a par value of $94,900. Successive payments in cash and distribution of personal overdrafts were made after that date to the preferred stockholders of the French Dry Cleaning Co. and by July 31, 1928, the entire outstanding preferred stock of the corporation, having a par value of $80,000, was liquidated except for an amount of $728.52 held by Arthur I. May. After July 31, 1928, additional payments were made to Joseph May and Benjamin F. May (of Atlanta) in excess of $14,000. The petitioners present balance sheets to show that at successive stages in the distribution the French Dry Cleaning Co. remained solvent, with an excess of assets over liabilities, including its tax liability for 1928, which had not then been determined. On May 29, 1928, after all of its common stock had been redeemed, the French Dry Cleaning Co. retained assets of $125,855.37 against liabilities of $98,748.97.

On July 31, 1928, after all of its preferred stock except the amount of $728.52 had been liquidated, the company retained assets of $30,672.89 against liabilities of $19,323.49. No balance sheet later than July 31, 1928, is in evidence, but it is apparent from the stipulation that the distributions made to Joseph May and Benjamin F. May after that date wiped out the margin of solvency existing as of July 31 and rendered the company insolvent, and it was found to be without assets when a distraint warrant was issued in 1933. Benjamin F. May would therefore be liable to the extent of the $10,000 he received after July 31, 1928, and Joseph May would be liable for the $4,855.64 he received on October 26, 1928, plus any part of two undated distributions listed in the stipulation which were made after July 31, 1928. But the petitioners claim there is no liability on the part of any of the stockholders for distributions made prior to July 31, 1928, because the corporation remained solvent on that date, and three of the five petitioners here received all of their distributions prior to July 31, 1928, namely, Benjamin E. May (of Mobile, Alabama), Alvin H. Fuller, and Arthur I. May.

The petitioners' position, we think, overlooks the controlling fact that the distributions in liquidation of their stock were all made in pursuance of a plan of complete liquidation of the French Dry Cleaning Co. The petitioners do not deny the existence of a plan of liquidation; in fact, they admit in their pleadings the respondent's allegation that a large part of the assets of the French Dry Cleaning Co. was distributed pursuant to a plan of liquidation. In the *French Dry Cleaning Co.* case we found the fact to be as stipulated that:

The plan under which the assets of the French Dry were transferred to Atlanta Laundries, Inc., contemplated that the holders of the French Dry common stock should receive pro rata the preferred and common stock of Atlanta Laundries, Inc., and that the cash should first be used in liquidating the indebtedness of the French Dry and then for retiring the outstanding preferred stock of the French Dry.

In order to insure that the indebtedness would be paid, it was agreed that the cash consideration paid by the Atlanta Laundries, Inc., would be deposited in an Atlanta bank in the name of the French Dry Cleaning Co., and that checks issued thereon should be countersigned by Herbert J. Haas, attorney for the Atlanta Laundries, Inc., until an affidavit should be made on behalf of the French Dry Cleaning Co. that all the indebtedness had been fully paid, "it being the understanding that said funds shall be used insofar as they are necessary to the discharge of said indebtedness, and for no other purpose." The corporate resolution of May 26, 1928, recited the plan of complete liquidation of all the capital stock of the French Dry Cleaning Co. It provided for the distribution of all of the stock received from the Atlanta Laundries, Inc., as a liquidating dividend to the

common shareholders of French Dry, to be delivered upon the surrender of their shares of common stock in the corporation; and it provided for the redemption of preferred stock of French Dry at par for cash. The part of the plan calling for the redemption of the entire capital stock was carried out, and by July 31, 1928, it had all been liquidated except for $728.52 due to Arthur I. May on his preferred stock; but that part calling for payment of all debts of the corporation was not carried out, and the tax liability here in question was never paid. In such circumstances, where a corporation sets out to retire all its capital stock, even though it may plan to leave enough assets to discharge its obligations to creditors, we have no doubt that the stockholders are not free from liability as transferees until the debts are finally paid. The courts have repeatedly held, as did the Circuit Court of Appeals for the Fifth Circuit in *Robinson* v. *Wangeman*, 75 Fed. (2d) 756 (1935), that: "The assets of a corporation are the common pledge of its creditors, and stockholders are not entitled to receive any part of them unless creditors are paid in full." This doctrine dates back as far as Justice Story's famous formulation in *Woods* v. *Dummer*, 3 Mason 308, and it was stated by the Supreme Court in these words in *Sanger* v. *Upton*, 91 U. S. 56:

> The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it bona fide for a valuable consideration and without notice. It is publicly pledged to those who deal with the corporation, for their security.

Whatever may be the present status of the trust fund doctrine as applied to some situations (see *McDonald* v. *Williams*, 174 U. S. 397; *United States* v. *Fairall*, 16 Fed. (2d) 328), we think that certainly this much of it remains—that a corporation must pay its debts before it liquidates its entire capital stock. Even those cases which have pointed out limitations on the trust fund doctrine recognize this as fundamental. In the case of *Hospes* v. *Northwestern Manufacturing & Car Co.*, 48 Minn. 174, the Supreme Court of Minnesota, in discussing *Woods* v. *Dummer*, *supra*, said:

> Evidently all that the eminent jurist [Justice Story] meant by the doctrine was that corporate property must be first appropriated to the payment of the debts of the company before there can be any distribution of it among its stockholders—a proposition that is sound upon the plainest principles of common honesty.

Another court has said that the trust fund theory "is not obsolete and will not become obsolete anywhere until honesty shall become

obsolete." *Witt* v. *Nelson* (Tex. Civ. App.), 169 S. W. 381. The courts of Georgia where this case arises have adhered to the trust fund doctrine from *Hightower* v. *Thornton* (1850), 8 Ga. 486, and *Reid* v. *Eatonton Manufacturing Co.* (1869), 40 Ga. 98, to *Fitzpatrick* v. *McGregor* (1909), 133 Ga. 332; 65 S. E. 859; and *Williams* v. *Clemons* (1934), 178 Ga. 619; 173 S. E. 718.[2] In this state of the authorities we must hold that all the stockholders in the case at bar who received distributions pursuant to the plan of complete liquidation are liable as transferees to the extent of the value of the assets received. We do not think the cases relied on by the petitioners hold to the contrary. *McDonald* v. *Williams*, *supra*, involved dividends paid by a corporation out of capital but received by the stockholders in good faith, believing them to be out of earnings and profits. In such a situation the stockholders were not chargeable with knowledge of the wrong of the directors and the dividends were not recoverable by creditors on subsequent insolvency. Here, however, we have a totally different situation. The assets of the French Dry Cleaning Co. were sold to the Atlanta Laundries, Inc., pursuant to a plan that the proceeds of the sale would be used first to pay the debts of the French Dry Cleaning Co. and then the remaining assets would be distributed to the stockholders in liquidation of their stock. The Atlanta Laundries, Inc., made certain requirements to insure that the debts would indeed be paid first. But the plan was not carried out; the distributions to stockholders were made first and the debt to the United States was never paid. In such a case there can be no question of notice to the stockholders that capital is being impaired or that a complete liquidation is being effected, for they were required to surrender their capital stock in order to participate in the distribution. Thus, as the stockholders participated in the complete liquidation of the entire capital stock before all debts were paid, we think their liability persists and that the creditors can follow the funds distributed to them. The responsibility of stockholders who receive a return of their capital in complete liquidation does not cease with their merely setting aside a fund which at its then value is sufficient to pay debts, but continues until the debts are actually paid. The equity of the creditors is superior to that of the stockholders.

*Eliza J. Wray*, 24 B. T. A. 94, invoked by the petitioners, was a case where the Commissioner failed to establish the ultimate insolvency of the company, and we held that he had not proved that the corporation itself was unable to pay the tax or that he had exhausted

---

[2] See also *Bank of Morgan* v. *Reid*, 107 S. E. 555 (Ga. App., 1921) ; for the effect of the municipal law in transferee cases see *Harwood* v. *Eaton*, 68 Fed. (2d) 12 ; for a further limitation on the power of a Georgia corporation to liquidate its entire capital stock see *Kaminsky* v. *Phinizy*, 54 Fed. (2d) 16.

his remedies against the corporation. *M. H. Graham*, 26 B. T. A. 301, did not, properly speaking, involve a liquidating dividend at all since it does not appear that any stock in the transferor was surrendered upon the distribution in question; also the distribution did not impair the capital of the corporation, but left the assets representing the capital stock completely intact to meet the claims of creditors; finally, there was no evidence there of the existence of any plan of complete liquidation of all of the capital stock, or, indeed, any of the capital stock of the corporation at the time when the dividend in question was paid. On the other hand, a case which is very closely in point is *W. S. Scamehorn*, 27 B. T. A. 155. There a corporation sold its assets for $100,000, liquidated the minority stockholdings for $125 a share, paid all the debts of the corporation except the Federal tax liability, and still had on hand sufficient assets to cover that liability. The corporation was subsequently made insolvent by distributions to certain of its shareholders and the tax liability was never paid. It was held that the minority stockholders whose interests were first liquidated, as well as those receiving the final distributions, were liable as transferees. It seems to us that the particular order of distribution is immaterial where all the distributions are made in pursuance of a single plan of complete liquidation.

We think it is unimportant in the case at bar that certain of the holders of common stock were not apprised of the distributions made after July 31, 1928, in violation of the plan. By surrendering their stock in return for the distribution of May 29 they subscribed to the plan of reversing the normal order of liquidation by making distributions to stockholders before debts were paid. This, we think, makes them liable along with the rest of the stockholders if the fund remaining for creditors should for any reason prove inadequate. As stockholders receiving distributions in complete liquidation, we think they became guarantors that the fund left for creditors should actually prove sufficient to discharge their obligations. In view of the imminent possibility of dissipation or depreciation of assets left for creditors in such a case as this, it might even be held, if it were deemed necessary to go so far, that as a matter of law the retirement of a corporation's entire capital stock is made in contemplation of insolvency and therefore is in fraud of creditors. The courts have been zealous in transferee cases to protect the revenues from any misuse of the corporate entity theory. See *Helvering* v. *Wheeling Mold & Foundry Co.*, 71 Fed. (2d) 749; *Concrete Industries Co.*, 19 B. T. A. 655.

The second issue is the value of Atlanta Laundries, Inc., preferred stock which was distributed to the petitioners on May 29, 1928; the respondent concedes that the common stock distributed was without

value.  In the transferor case, *French Dry Cleaning Co.* v. *Commissioner*, *supra*, we found the value of the preferred stock of Atlanta Laundries, Inc., on the day of its receipt by the French Dry Cleaning Co., January 16, 1929, to be $60 per share, and this finding was affirmed by the Circuit Court of Appeals for the Fifth Circuit, which pointed out:

> It appears from the record that in July, 1932, Atlanta Laundries, Inc., defaulted on the payment of interest on its bonds.  It is probable that thereafter the stock had little or no value.  That, however, is immaterial as we are dealing with the situation existing in January, 1928, when the reorganization was effected.  It further appears that for the twelve months ending November 15, 1927, petitioner's volume of business was approximately $505,000.  The basis of cost of the tangible property transferred was, in round figures, $384,000. Since petitioner received only about $305,000 in cash, this left a considerable amount of the purchase price of tangibles to be represented by stock.  In addition, the going business value was represented by stock.  This must have been a large percentage of the value considered in effecting the consolidation.

It appears in evidence that the book value of the preferred stock of Atlanta Laundries, Inc., considering the common stock as having no value, was more than $100 a share from January 16, 1928, when the books of the Atlanta Laundries, Inc., were first opened, through December 31, 1931.  Furthermore, and more important, the net earnings available for dividends in both 1928 and 1929 were well in excess of the $7 per share which was required to pay dividends on the preferred stock, and regular semiannual dividends were paid on the preferred stock throughout those two years.  The earnings for 1925 through 1927 of the respective companies which were consolidated support the earning power indicated for the preferred stock of the new company, Atlanta Laundries, Inc.  This would indicate a value in the neighborhood of its $100 par for the year 1928, when the distribution occurred.  The respondent claims a value of only $60 per share for the preferred stock, and we have no doubt that such a valuation is justified on the basis of the earning power of the stock and its book value.  The petitioners do not challenge the correctness of the figures put in evidence by the Commissioner, but only their materiality, claiming that, in the absence of evidence of any sales of the stock, fair market value can not be established from book value and earning power alone.  Where there is no evidence that the figures are unreliable, we think it is well settled that book value and earning power are sufficient to establish fair market value.  *Wessel* v. *United States*, 49 Fed. (2d) 137; *Commissioner* v. *Brier Hill Collieries*, 50 Fed. (2d) 777; *Shanley & Furness, Inc.*, 21 B. T. A. 146.  We have found as a fact that the preferred stock of the Atlanta Laundries, Inc., on May 29, 1928, had a fair market value of $60 per share.

*Judgment will be entered under Rule 50.*