*974 OPINION.
Leech :
The issue is whether petitioners are liable as transferees of the assets of the Botz Printing & Stationery Co., hereinafter called the Botz Co., under section 311 of the Internal Revenue Code. Respondent has the burden of proof.
The amount of the tax assessed against the Botz Co., the transferor, is not in issue. The collector of internal revenue having failed to collect this tax from that transferor, because no assets belonging to it could be found, proposed the liabilities here contested against each of the petitioners as transferees of the assets of the Botz Co. It is admitted that assets of that company were transferred to and re *975 ceived by petitioners in exchange for shares of their stock in that corporation.
Petitioners contend that the distributions made to them in 1933, 1934, 1935, and 1936, or, in any event, those for 1933 and 1934, did not render the corporation insolvent; that, under the contract of December 23, 1921, they were creditors, and, as such, the corporation had a right to prefer them over other creditors, even if insolvent; and that the judgments of the Circuit Court of Cole County established their status as creditors and are controlling here. We agree with none of these contentions in so far as they affect the issue here.
Assuming that the Botz Co. accepted or was bound by the contract evidenced by the offer of the “Hugh Stephens Printing & Stationery Company” dated December 23, 1921, and the inferred acceptance by buying the stock, certainly, petitioners buying stock of the Botz Co. became shareholders in and not creditors of that company. Helvering v. Richmond, Fredericksburg & Potomac R. R. Co., 90 Fed. (2d) 971; Dayton & Michigan Railroad Co., 40 B. T. A. 857; affd., 112 Fed. (2d) 627. And that conclusion is in no way disturbed by the judgments of the Circuit Court of Cole County mentioned in our findings of fact. It is true that the Board is generally bound by local law with respect to title to property within a state. Blair v. Commissioner, 300 U. S. 5. But that rule is ineffective here. The judgments mentioned, at most, merely purported to decide that these petitioners became creditors of the Botz Co. after and because of the failure of that company to repurchase their stock upon demand made after August 1, 1933. Moreover, when the proceedings in the Missouri courts were brought upon which these judgments were entered, the Botz Co. was without assets of any value. It had carried on no business for eight years and therefore had no adverse interest, in fact, to the petitioners. The judgments were clearly entered by the consent of the Botz Co. The answers filed by the attorney for that company in each of these suits specifically admit not only the allegations of the petition but the liability of the Botz Co. in the amounts severally claimed there by the plaintiffs, and on this admission pray for a judgment in each case for the defendant. The collusive charactei of the proceedings (see Freuler v. Helvering, 291 U. S. 35), we think, is clearly established. These judgments, even if material to the issue here, are in no way binding upon us. Cf. Freuler v. Helvering, supra; Blair v. Commissioner, supra; Poe v. Seaborn, 282 U. S. 101; Hugh D. Rhodes et al., Administrators, 41 B. T. A. 62; affd., 117 Fed. (2d) 509; Estate of Frederick R. Shepherd, 39 B. T. A. 38.
Since the rights of a shareholder in the assets of a corporation are undoubtedly subordinate to those of a creditor, it would scarcely seem possible that the corporation, by contract with its shareholders *976 alone, could alter that priority. See Cook on Corporations, sec. 9. However, in any event, the status of the petitioners as stockholders was not changed until and unless the “repurchase” of their stock or the failure to do so upon petitioners’ demand, both of which occurred after August 1, 1933, effected such change. The debt for the tax, basing the present proceedings, arose on August 1, 1933, when the sale or exchange by the Botz Co. occurred, giving rise to the tax. Benjamin E. May, 35 B. T. A. 84. Thereafter the Botz Co. carried on no business except that of realizing on its assets and “purchasing” its stock. The subsequent agreements to “repurchase” all of its outstanding stock, carried out during 1933, 1934, 1935, and 1936 — in so far as its assets permitted — and the cancellation of the stock thus reacquired, despite the fact that these several reacquisitions may have taken the form of “purchases” of the stock, constituted a series of distributions in partial liquidation of the Botz Co. L. B. Coley, 45 B. T. A. 405, and cases therein cited.
In 1933, the corporation distributed $217,090 in liquidation of 2,241 shares of its stock; in 1934 it distributed $97,125 in liquidation of 1,175 shares; in 1935 it distributed $14,800 in liquidation of 148 shares; and in 1936 it distributed $6,500 in liquidation of 100 shares. By the end of 1936 the corporation had distributed a total of $335,515 to its stockholders (petitioners included), in liquidation of 3,664 shares of its stock, thereby leaving no assets except some accounts and notes receivable which had no market value. It may be true that these distributions in the earlier years did not bring about insolvency of the Botz Co., but the important and controlling fact is that the distributions were each made as one of a series of distributions in partial liquidation, which unquestionably rendered the corporation insolvent. The petitioners, distributees, are therefore liable as transferees in the respective amounts of those distributions they received. Robinson v. Wangemann, 75 Fed. (2d) 756; Edward E. Garcin, 22 B. T. A. 1027; Benjamin E. May, supra.
Since each of the petitioners thus received amounts in excess of the liability determined against each as transferee of the Botz Co., we sustain the respondent.

Decisions will be entered for the respondent.