Allen Sanford Gottlieb v. Commissioner.
Gottlieb v. Commissioner
Docket No. 36062.
United States Tax Court
1953 Tax Ct. Memo LEXIS 144; 12 T.C.M. (CCH) 939; T.C.M. (RIA) 53282; August 19, 1953
*144 Petitioner's father gave money to petitioner's mother over a period of years. By 1945, over $40,000 of such funds were invested in petitioner's name by his father in a wholesale beer-distributing firm. Petitioner sold the wholesale firm in 1947 and bought a retail liquor store. Petitioner's father was convicted and sentenced in 1949 for fraudulent evasion of income tax for the years 1941 to 1945, inclusive. Deficiencies and 50 per cent additions to tax imposed by Sec. 293 (b) of the Code were determined by respondent against the father for the same years, and the parties stipulated the father was liable for the amounts so determined. In 1949, petitioner's father transferred to him his total interest in a retail liquor store, including a retail license which petitioner succeeded in having issued in his name. Respondent seeks to hold petitioner as transferee of his father's assets to the extent of the amount invested by petitioner in the retail liquor store in 1947 and the value of the retail liquor license transferred in 1949, alleged to be worth $5,000. 1. Held, petitioner is not liable as a transferee of funds with which he purchased the retail liquor store in 1947, since the funds *145 were, in fact, transferred to him in 1945 or earlier, and there is no showing of the transferor's insolvency at that time; nor that the transfer was made with intent to hinder, delay, or defraud creditors. 2. Held, further, petitioner is not liable as a transferee of the retail liquor license in 1949, since respondent failed to prove its value. John L. Westmoreland, Esq., and Laird W. Shull, Esq., for the petitioner. Thomas C. Cravens, Jr., Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax and penalties asserted against Allen Sanford Gottlieb (hereinafter referred to as the petitioner) as transferee of the assets of his father, Samuel J. Gottlieb, as follows: Calendar Year
Income Tax
50% Penalty
1941
$ 903.07
$ 451.54
1942
4,446.78
2,223.39
1943 *
41,569.47
20,784.74
1944
34,478.05
17,239.03
1945
16,515.47
8,257.74
$97,912.84
$48,956.44
The issues raised by the pleadings are: (1) is petitioner liable as a transferee under section 311 of the Code for income tax deficiencies and additions to tax imposed by section 293 (b) of the Code to the extent of the value of such of his father's assets as were allegedly *146 transferred to him, either because such transfer resulted in the transferor's insolvency, or because such transfer was made with intent to hinder, delay, or defraud creditors under Georgia law; and (2) if so, is the collection of such deficiencies and penalties for all years barred by the statute of limitations; or, if barred for the years 1941 to 1943, inclusive, do the provisions of section 275 (c) of the Code permit assessment and collection of deficiencies and penalties for the years 1944 and 1945. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner's father, Samuel J. Gottlieb (hereinafter referred to as Samuel), during the years here in question, resided at 1720 Rock Springs Road, N.E., Atlanta, Georgia, with his wife, Sadie K. Gottlieb (hereinafter sometimes referred to as Sadie). He filed individual Federal income tax returns for those years with the collector of internal revenue for the district of Georgia. From 1939 until April 1949, Samuel owned and operated a retail liquor store, known generally as the Piedmont Liquor Store (hereinafter referred to as Piedmont) but sometimes as Sam's Liquor Store, *147 located in the Piedmont Hotel, at the corner of Forsyth and Luckie Streets, N.W., in Atlanta. During the years here in question, Samuel gave various sums of money to Sadie, which he, however, thereafter used and invested as he chose. Sadie made deposits and withdrawals of such money from the bank and signed any documents necessary to its use as directed by Samuel. She had no knowledge of the details of any financial transactions in which her money was used. On December 31, 1944, the books of the Royal Distributing Company of Columbus, Georgia, a wholesale beer-distributing company, showed debts owing to Mrs. Sadie K. Gottlieb in the amount of $43,383.50. The debts owing to her represented the amount invested in the firm to acquire petitioner's sole interest therein. On August 10, 1945, Samuel filed Treasury Form 1632, applying for a wholesaler's permit under the Federal Alcohol Administration Act, in the name of Allen S. Gottlieb d/b/a Royal Distributing Company (hereinafter referred to as Royal). In answer to question 3C on such form, Samuel explained that he was managing petitioner's business interests, as attorney-in-fact, during the latter's service in the armed forces. In answer *148 to question 1D, Samuel stated that he had furnished petitioner the necessary funds to invest in the business. In answer to question 1E, Samuel stated that the permit applied for would change Permit No. 6-P-216, held in the name of Allen S. Gottlieb and John J. Bradley, to one to be held exclusively by Allen S. Gottlieb. This application was approved August 11, 1945. Thereafter and until several months following petitioner's discharge from the armed forces in 1946, the business of Royal was managed for him under the general direction of Samuel. Petitioner took over the active management of the firm in the latter part of 1946. His Federal income tax returns for the fiscal years ending February 28, 1945, 1946, and 1947, filed with and accepted by the collector of internal revenue for the district of Georgia, reported the total net income or loss from the operation of Royal. On August 1, 1947, a purchase and sale agreement was signed by petitioner "individually, d/b/a Royal Distributing Company" and one H. J. Moret by which the Columbus Distributing Company, Inc., purchased Royal. Samuel also signed the agreement. The total sales price was $40,331.77. In payment thereof, Columbus Distributing *149 Company issued five checks payable to petitioner, the first dated August 1, 1947, the last dated September 22, 1947. No capital loss from the sale of Royal was claimed by Samuel on his return for 1947. On December 2, 1947, petitioner purchased a retail liquor store located at 2151 Peachtree Road, N.W., with the proceeds from the sale of Royal. Petitioner's initial investment in this retail store, known thereafter as Allen's Liquor Store, was $42,732.83. He continued to own and operate this store until its sale pursuant to respondent's jeopardy assessment in April 1951. A permit was issued by the Alcohol and Tobacco Tax Division of the Bureau of Internal Revenue to a business known as Gottlieb Bros., 524 Marietta Street, Atlanta, Georgia, on August 7, 1946. This permit was cancelled on August 19, 1946. The reason for the termination was that on that date a business known as Allen Gottlieb's was issued a permit as successor to Gottlieb Bros. to do business at the same address. Petitioner testified that the firm was purchased by him with money borrowed from his mother. A loss of $34,286.06 from this business was claimed by Samuel on his Federal income tax return for 1947 and was disallowed *150 by the Commissioner. Petitioner attached to his Federal income tax return for the fiscal year ending February 28, 1948, filed September 15, 1948, pursuant to an extension granted by the collector, a letter stating that in such return "no effect has been or will be given to the operating profits or losses of Royal Distributing Company, Columbus, Georgia, or Allen Gottlieb's, Atlanta, Georgia, which were operated under my name but were owned by my father". Neither Samuel nor Sadie ever filed a gift tax return for any money or property allegedly given to petitioner. Respondent began an investigation of Samuel's returns for the years here in question in December 1946. Petitioner accompanied his father to one of the conferences during the initial stages of the investigation. He continued to discusses, and was familiar with, various aspects of the case throughout its course. The parties have stipulated Samuel's liabilities for deficiencies in the amount of $104,360.24 and 50 per cent additions to tax imposed by section 293 (b) of the Code in the amount of $52,180.14. Samuel was convicted after pleading nolo contendere on two counts of fraudulent evasion of tax under section 145 (b) of the Internal Revenue Code *151 in the United States District Court for the Northern District of Georgia on April 8, 1949, and began serving concurrent sentences of a year and a day on April 15, 1949, in the Federal Correctional Institution at Tallahassee, Florida. Samuel filed three offers in compromise showing the fair market value of assets and liabilities, exclusive of Federal income tax, as follows: Date of Offer
Assets
Liabilities
4/ 4/49
$29,415.28
$33,100.00
1/24/50
15,300.00
18,550.00
3/29/50
25,600.00
36,645.87
Samuel and petitioner always held the necessary city, state, and Federal licenses or permits authorizing them to operate retail or wholesale beer or liquor establishments. Chapter 55, Article 1, section 55-120, 121 of the Code of the City of Atlanta, prohibits the transfer or sale of a license to operate a retail liquor store without the approval of the Mayor and General Council of the city. State licenses are issued only after city licenses have been approved. In 1949 the number of retail licenses granted by the City of Atlanta was limited to 150. Retail liquor licenses issued by the city are, as a matter of customary practice, often sold for a sum reached by negotiation between the buyer and seller thereof. *152 The contingency of the buyer securing the necessary official approval of the transfer and the availability of a suitable location are factors of considerable importance in determining the value of such license. By a conveyance dated April 8, 1949, Samuel transferred all of his "right, title and interest" in Piedmont to petitioner, "in consideration of the sum of One Dollar ($1.00) together with other valuable consideration". On May 17, 1949, an Atlanta retail liquor license was issued to petitioner authorizing him to operate Piedmont as transferee of Samuel. A Georgia state license was issued to him on May 19, 1949. On May 30, 1949, petitioner signed a lease with the Piedmont Hotel Company securing the premises then occupied by Piedmont. The lease was to take effect on July 1, 1949, at the expiration of a previous lease executed by Samuel and was to run for 90 days. At the expiration of the 90-day period, a renewal lease was executed which permitted petitioner to retain the premises but was subject to termination on 90 days' notice, in writing, by either party. The books of Piedmont on May 19, 1949, show assets and liabilities as follows: Dr.
Cr.
Cash in Bank
$ 844.26
Change Fund
350.00
Inventory
11,121.58
Meter Deposits
90.00
Equipment
5,535.15
Reserve for Depreciation
$ 2,834.42
Prepaid Interest
15.59
Notes Payable
3,587.78
Accounts Payable
13,366.50
Re. S.S.
32.57
Re. W. Tax
157.50
Accts.-Rec. - S. J. Gottlieb
2,022.19
$19,978.77
$19,978.77
*153 Of the total liabilities, $12,986.50 represented Georgia State Fi Fas. Shortly after April 15, 1949, the State levied upon Piedmont and closed it for approximately 10 days. Petitioner succeeded in having one L. A. Rosenberg pay off these tax Fi Fas, and he subsequently bought them from him for the sum of $13,842.39. On April 22, 1949, a jeopardy assessment was made against Samuel by the respondent for taxes and penalties due for the years here in question. The total amount realized from the seizure and sale of all assets in Samuel's name was $6,336.31. Piedmont was not levied on because representatives of respondent did not consider it to have sufficient value in view of its outstanding liabilities. In July 1949, petitioner filed a protest with respondent which stated, in part, as follows: "Affiant denies that he is the transferee of any assets of Samuel J. Gottlieb with the exception of certain assets having a valuation of less than $5000.00 which were transferred to affiant on or about May 19, 1949; such assets consisting of the entire interest of the said Samuel J. Gottlieb in and to the business known as Piedmont Liquor Store located at 85 Forsyth Street, N.W., Atlanta, Georgia." *154 The protest further recited the revocation of Samuel's license to operate Piedmont, and denied that Allen's Liquor Store was purchased with any assets transferred by Samuel in 1947. Petitioner concluded his protest by stating his willingness to account to respondent for the amount of actual assets belonging to Samuel which represented his interest in Piedmont. Such assets, petitioner alleged, would not be in excess of $5,000. On June 30, 1949, additional assessments were made against Samuel as follows: Year
Income Tax
Interest
1946
$16,280.06
$2,243.92
1948
2,632.92
52.66
Respondent conceded on brief that petitioner's liability as transferee should be limited to $47,732.83 rather than $146,869.28 as was initially determined in the deficiency notice issued May 17, 1951. Of the reduced amount, $42,732.83 represented his total investment in Allen's Liquor Store, and $5,000 represented the alleged value of the Atlanta retail liquor license to operate Piedmont. Respondent made a jeopardy assessment against petitioner as transferee on March 30, 1951. Immediately thereafter, all property held in petitioner's name was seized and sold. From such seizure and sale, the respondent realized a net amount *155 in the sum of $16,863.99. Samuel transferred no assets to petitioner prior to 1947 with intent to hinder, delay, or defraud creditors. He did not transfer any assets to petitioner in 1947. Respondent failed to prove that Samuel's Atlanta retail liquor license to operate Piedmont, transferred to petitioner in 1949 had any value. Samuel was insolvent before and after the transfer of all of his right, title, and interest in Piedmont to petitioner in 1949. Opinion RICE, Judge: Section 1119 (a) [1] of the Internal Revenue Code places the burden of proof upon the respondent to establish the necessary elements of transferee liability. The two basic conclusions upon which the respondent herein attempts to sustain his burden are by showing (1) a transfer in 1947 from Samuel of $42,732.83 with which petitioner purchased Allen's Liquor Store in December of that year; the transfer of a retail liquor *156 license having an alleged value of $5,000 in May 1949; and (2) the insolvency of Samuel before and after both transfers. In the alternative, he contends Samuel made the transfers with the intention to hinder, delay, or defraud creditors and that such transfers are thus void under Georgia law. We do not think the record justifies a determination of petitioner's transferee liability. Petitioner contends that funds used to purchase Allen's Liquor Store were a gift from his mother, Sadie, at the time Royal was purchased in his name. It is unnecessary for us to determine which of petitioner's parents was the owner of those funds or which was the transferor thereof. For one fact is unmistakably clear on the record: the funds were transferred to petitioner in 1945 or earlier. His Federal income tax returns for the fiscal years ending February 28, 1945, 1946, and 1947, filed with and accepted by the collector of internal revenue for the district of Georgia, report income or loss from the operation of Royal in which the funds were initially invested. The respondent on brief anticipated that the argument might be made that a transfer of the funds with which petitioner purchased Allen's Liquor *157 Store in 1947 occurred prior to that time. He answers such argument by stating that liquidation of assets over a period of time is treated as if it had occurred at one time and that the Commissioner need only show the ultimate insolvency of the taxpayer at the conclusion of liquidation, citing Borall Corporation v. Commissioner, 167 Fed. (2d) 865 (C.A. 2, 1948); Otto C. Botz v. Helvering, 134 Fed. (2d) 538 (C.A. 8, 1943); Scott v. Commissioner, 117 Fed. (2d) 36 (C.A. 8, 1941); and Benjamin E. May, 35 B.T.A. 84 (1936). The inapplicability of such a proposition to the instant case is apparent on its face.Here there was only one sum of some forty odd thousand dollars, all of which had been transferred to petitioner by August 1945 and invested for him in a wholesale beer-distributing firm. For approximately a year and a half previously and for a year and a half thereafter, he paid Federal income taxes on the profits from that investment or was credited on his returns for losses therefrom. In 1947 the wholesale business was sold for forty odd thousand dollars which was invested almost immediately in a retail liquor store; and petitioner subsequently paid taxes on the profits therefrom. *158 A series of transfers connotes the dissipation of a total sum in several smaller amounts over a period of time, or the successive transfer of distinct and separate funds. It does not mean the reinvestment of the same funds by the transferee. Thus, assuming that Samuel was the transferor of funds used by petitioner to purchase Allen's Liquor Store in 1947, petitioner cannot be held liable as transferee since the transfer occurred in 1945 or earlier; and the record is barren of any evidence establishing Samuel's insolvency at the time of transfer. Insolvency immediately after the transfer is an essential element which respondent must, but has failed to, prove. Ruth Halle Rowen, 18 T.C. 874 (1952), on appeal C.A. 2, November 20, 1952. Likewise, we find inadequate evidence in the record to sustain respondent's alternative contention that, should insolvency not be shown, such transfers as were made were with intent to hinder, delay, or defraud creditors, and are thus void under Georgia law. Chapter 28-2, section 28-201 of the Georgia Code[2] *160 declares void transfers made in defraud of creditors. But respondent can point to nothing in this record, other than Samuel's conviction of fraudulent *159 evasion of tax under section 145 (b) of the Internal Revenue Code, as proof that transfers to petitioner in 1945 or earlier were made with such intent. While conviction of a taxpayer under section 145 (b) of the Code may be sufficient to sustain the 50 per cent penalties provided in section 293 (b), in the absence of evidence to the contrary, see: Thomas J. McLaughlin, 29 B.T.A. 247 (1933), we think that such conviction is no more sufficient proof of an intent to defraud creditors than conviction for other crimes would be sufficient proof of fraudulent intent under section 293 (b). J. William Schultze, 18 B.T.A. 444 (1929). We have noted the letter accompanying petitioner's return for the fiscal year ending February 28, 1948. We do not think his statements therein sufficient to overcome the record as a whole so as to disturb our holding with reference to the funds originally transferred in 1945 or earlier. Petitioner's testimony with reference to the letter was forthright and convincing. He signed it upon the advice of counsel in the understandable hope, but mistaken belief, that it would help his father in his tax case. The respondent seeks to establish petitioner's liability as the transferee in 1949 of Samuel's "right, title and interest" in Piedmont only to the extent of the value of Samuel's Atlanta retail liquor license, allegedly transferred at that time. We already have found that the respondent failed to prove that the license had any value. We have also noted petitioner's *161 protest filed with respondent in July 1949. The protest clearly admits petitioner's liability as a transferee of Samuel's assets in that year, but it does not admit the value of those assets, the license, in particular, which we have found respondent failed to prove had any value. See Ludwig Vogelstein, 16 B.T.A. 947 (1929); Willard H. Ashton, 28 B.T.A. 582 (1933). During the trial, respondent called one W. Herbert Hodges to testify. Hodges was both a lawyer and an accountant. He was employed in 1948 as an accountant to prepare returns for petitioner and Samuel. Petitioner, through his counsel, objected to Hodges being allowed to testify on the grounds that communications to him were between attorney and client and, hence, were privileged. We sustained the objection. Respondent's counsel was permitted to make an offer of proof that the witness' testimony would have shown that, in preparing petitioner's and Samuel's returns for the year 1948, questions were raised in connection with the ownership of Allen Gottlieb's and the Royal Distributing Company; that certain documents had been in his possession and acted on by him in preparing the returns, and that he requested, for his own *162 protection, letters, or other documentary evidence, substantiating the ownership of these businesses. However, even if we assume that Hodges would have testified that Samuel owned them, such testimony would not be sufficient to alter our conclusion that the transfer of the forty odd thousand dollars to petitioner occurred in 1945 or earlier. This is so for the same reasons we have outlined previously why the letter attached to petitioner's 1948 return was insufficient to overcome the record as a whole. In view of our holding that the transfer in 1945 or earlier was not fraudulent under Georgia law and that Samuel was not shown to be insolvent at that time, it is unnecessary for us to reach any determination of the issues relating to the period in which assessment and collection of the deficiencies and penalties might be made against petitioner. Decision will be entered for the petitioner. Footnotes
*. Income and Victory Tax.↩
1. SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES. (a) Burden of Proof. - In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.↩
2. CHAPTER 28-2. ACTS VOID AS AGAINST CREDITORS. 28-201. (3224) Enumeration of void acts. - The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, * * *: 1. Every assignment or transfer by a debtor, insolvent at the time, of real or personal property, or choses in action of any description, to any person, either in trust or for the benefit of, or in behalf of, creditors, where any trust or benefit is reserved to the assignor or any person for him. * * *
2. Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid. * * *↩